Melvin L. JONES, Appellant,

v.

The STATE of Texas, Appellee.

No. 58755.

Court of Criminal Appeals of Texas, Panel No. 2.

Feb. 27, 1980.

Rehearing Denied April 16, 1980.

---

**10.** See indictment recited, *ante*, at 2.

Antonio G. Cantu, San Antonio, court appointed, Mitchell S. Rosenheim, San Antonio, court appointed, for appellant.

Bill M. White, Dist. Atty., James W. Blagg, David Berchelmann and H. Wayne Campbell, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

OPINION

CLINTON, Judge.

This is an appeal from a conviction for delivery of heroin wherein the jury assessed punishment at confinement for a term of fifteen years. The sufficiency of the evidence is not challenged.

Appellant presents three grounds of error, two of which advance the contention that juror Betty Jane Martinez engaged in misconduct when she allegedly withheld material information during the voir dire examination and then compounded that into jury misconduct when she introduced applicability of the parole laws to the jury

in its discussions on punishment.[1] Though we find that juror Martinez did in fact engage in reprehensible conduct, for reasons to be explained, we are most reluctantly constrained to find that appellant was not prejudiced by her malfeasance. We therefore affirm the judgment below.

The thrust of appellant's first ground of error is that juror Martinez was guilty of misconduct when during voir dire she deliberately withheld the fact that she had once been employed as a jail guard at the Bexar County Jail. This fact was brought out in open court[2] by fellow juror Louis Carillo at the hearing on appellant's motion for new trial when he recalled that Martinez informed the panel during their punishment deliberations of this fact but cautioned them, "Don't say nothing about it."

Ms. Martinez took the stand herself at the hearing and denied that she had informed the jurors of her jail guard job and that she told them to keep it quiet. But, she further claimed that she stated this fact during the voir dire examination shortly after she informed counsel that she had been employed as a clerk typist at the San Antonio Police Department.[3] We are satisfied the record belies both of her assertions.

It must be observed that Martinez was something less than candid from the onset of her appearance on the panel. She failed to disclose on the jury information form completed by her that she had in fact been a witness in a criminal proceeding. When asked by the State Martinez revealed that she had been a witness to the taking of a criminal confession while she had been employed with the San Antonio Police Department and had testified in trial of the case. That her performance as a venire-person and as a witness raises serious doubts about her truth and veracity is to underscore the obvious.

However, we are impelled to find that, though this potentially material fact was not disclosed to defense counsel during voir dire, it is probably because he did not ask *any* questions calculated to bring this fact out. We have examined this record carefully and find that defense counsel only remotely neared the subject when he asked the panel if they had any *close* friends who were engaged in law enforcement. Ms. Martinez later explained during her individual voir dire that, although she had worked for the San Antonio Police Department, she did not have what she considered to be any close friends as a result of her tenure there. Of course, Martinez later stated that she could be fair and impartial and follow the law given to her by the trial, notwithstanding her subsequent failure to do so, with respect to discussion of parole.

At no time was Martinez asked about other prior employment, after she admitted that she had been employed with the San Antonio Police Department. For whatever it might be worth, Martinez later testified at the hearing on the motion for new trial that she had not meant deliberately to

---

1. Appellant also raises the contention that the trial court erred in failing to grant appellant credit for his pretrial incarceration time with which we deal *infra*.

2. The jury began its deliberations on punishment in the afternoon and recessed to resume the following morning. About 6:30 p. m. of the first day, a male purporting to be a juror—but who refused to give his name—telephoned appellant's trial counsel at his office; the conversation was overheard by an associate of counsel who on signal listened to it over an extension. The caller stated that one of the jurors, later identified as a female, had been a Bexar County jail guard, had not disclosed it in court and, indeed, had told the other jurors not to tell anybody; the caller also said that the conduct of the female juror "will have a bearing on

what happens." The matter was called to the attention of and developed before the trial court the following morning; the conclusion was that if the matter became an issue the trial court would permit a further hearing on it. On motion for new trial that was done.

3. Verbatim from the record, her gratuitous remark was:

 "But as I was finishing my statement, when I told you I was working for the police department, I told you I was a dispatcher and then I went across the street to the jail. I don't know whether you heard me or not but that is what I said."

 To that counsel responded, "I don't believe we'll find it on the record . . . .," and the record bears him out.

withhold her employment as a jail guard from defense counsel and that, had she been asked, she would have readily disclosed that fact to defense counsel.[4]

 The voir dire examination *is not* an exercise to test the ability of defense counsel to joust with a prospective juror in an attempt to see what quantum of information he may or may not be withholding. The voir dire process *is* designed to insure, to the fullest extent possible, that an intelligent, alert, *disinterested, impartial*, and *truthful* jury will perform the duty assigned to it. *De La Rosa v. State*, 414 S.W.2d 668 (Tex.Cr.App.1967). However, defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like. Unless defense counsel asks such questions, we must hold, as we do here, that the purportedly material information ·which a juror fails to disclose is not really "withheld" so as to constitute misconduct which would warrant a reversal. See and compare *Von January v. State*, 576 S.W.2d 43 (Tex.Cr.App.1978); *Salazar v. State*, 562 S.W.2d 480 (Tex.Cr.App.1978); *Shaver v. State*, 162 Tex.Cr.R. 15, 280 S.W.2d 740 (1955). Appellant's third ground of error is overruled.

However, analysis of Betty Jane Martinez' conduct is not over. In his first ground of error, appellant advances the contention that Martinez *again* committed misconduct when she introduced into the jury's discussion on punishment the issue of how long appellant would actually serve vis a vis the parole law and its "good time" corollary.

At the hearing on the motion for new trial, juror Louis Carillo recounted that Martinez told her fellow jurors that if appellant were sentenced to fifteen years, he would only serve three or four years in prison. However, Carillo admitted that he

was not at all influenced in his eventual assessment of punishment by Martinez' statement. Carillo also pointed out that Martinez, in initially advocating and, until the last, holding out for a punishment of life or ninety-nine years, seemed to assert that appellant could successfully serve a ninety-nine year sentence in seven to seven and one half years.

Carillo also noted that after Martinez was admonished by the jury foreman not to discuss the parole law any further, she stopped although there was some dispute as to whether she again brought up the subject.[5]

Martinez testified that she *did* bring up the subject of how much time appellant would actually serve under a fifteen year sentence but that she desisted in such discussion after being warned by the jury foreman. She recounted that the jury was deadlocked on the issue of punishment with eleven, including her, holding out for a life sentence and one lone juror, Louis Carillo, holding out for a term of five years. The general feeling of the jury, said Martinez, was that the judge would declare a mistrial on the basis of their inability to agree on punishment, and that the jury compromised, as a result, and assessed appellant's punishment at fifteen years. As noted above, juror Carillo, the lone hold-out for a lesser term of years, testified that his eventual decision to assess punishment at fifteen years was not the result of or in any way influenced by Martinez' statements concerning how much time appellant would actually serve in prison.

 As this Court recently pointed out in *Sanders v. State*, 580 S.W.2d 349, 351 (Tex. Cr.App.1979), although not every mention of the law requires reversal, *jury discussion of the parole laws is always misconduct*, citing *Moore v. State*, 535 S.W.2d 357 (Tex. Cr.App.1976). We went on to note that

---

4. Of course such a glib assurance is at odds with her statement that in fact she had revealed the jail guard job but maybe trial counsel did not hear her say it.

5. While we .cannot attribute additional discussion of the point to Martinez, we do know from the record that shortly before noon of the second day the jury sent a note to the trial judge asking for "an explanation of 'Life' sentence."

whether a discussion of the parole laws by the jury constitutes such error as to mandate reversal depends upon the particular circumstances of each case. *Sanders v. State*, supra at 351.

After grappling with various tests and measures to decide whether misconduct in discussing the parole law is reversible error, in *Heredia v. State*, 528 S.W.2d 847, 850–853 (Tex.Cr.App.1975) this Court reverted to application of principles statutorily provided in Article 40.03(7) and (8), V.A.C.C.P., and distilled a twofold approach: Whether the jury received "other testimony" detrimental to the accused or whether the degree of misconduct is such as to deny the accused a fair and impartial trial.

In the instant case, Martinez asserted that appellant could successfully serve a fifteen year sentence in three or four years. At the hearing on the motion for new trial, the State introduced into evidence a copy of the Rules and Regulations of the Texas Department of Corrections relating to eligibility for parole consideration. This material evidenced that with the T.D.C.'s "good-time" provisions, an individual sentenced to fifteen years could be eligible for parole as follows:

 Class III: five years

 Class I: three years

 Trusty: two years, six months

■ This computation does not take into account the increased good time provisions for inmates who donate blood while they are incarcerated. This Court has consistently held that commutation of time for good conduct and the executive power to grant pardons and paroles are common knowledge. See, e. g., *Heredia v. State*, supra at 850. With this in mind, then, Martinez' statement as to how long appellant would have to serve was a fairly accurate statement of the law and, perforce, not harmful.[6]

■ Turning to the second prong of the test set forth above, we are constrained to hold that appellant was not deprived of a fair and impartial trial. It was brought out that eleven of the twelve jurors were holding out for a life or ninety-nine year sentence and that only one juror favored a lesser number of years. If anything, the resultant discussion of the parole law, by aggravating the jury's deadlock, compelled the eleven who favored life or a ninety-nine year sentence to come down to a fifteen year sentence. The lone juror who eventually acceded to the majority acknowledged that he was not influenced in his eventual decision to come up to fifteen years by the strength of Martinez' assertions. See *Beck v. State*, 573 S.W.2d 786 (Tex.Cr.App.1978); *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr. App.1977). *Heredia v. State*, supra. Though it is true that Martinez incorrectly stated that an individual who received a ninety-nine year or life sentence would be eligible for parole in seven to seven and one half years, we fail to see the relevancy or harm shown inasmuch as appellant received a fifteen year sentence.

■ It is well settled that the trial judge is the trier of fact at the hearing on a motion for new trial, see, e. g., *Moreno v. State*, 587 S.W.2d 405, 412 (Tex.Cr.App. 1979), and that his findings thereon will not be disturbed absent a showing that he abused his discretion. *Beck v. State*, supra at 791. We do not hesitate to state that Martinez' conduct, not only during the voir dire examination but more so during her discussion about the parole law, is corruptive of, and manifestly at odds with, our recent pronouncement that "[t]he jury system and its purity should not be taken lightly." *Von January v. State*, supra at 46. Less than a truthful juror, who evidenced her lack of veracity at the beginning of proceedings and during the hearing on the motion for new trial, sat on this jury. But we are unable to say that her conduct was so grossly prejudicial to appellant so as to require the reversal of this cause. See and compare *Von January v. State*, supra;

---

6. *Moore v. State*, 171 Tex.Cr.R. 182, 346 S.W.2d 349 (1961) and cases discussed therein demonstrate the proposition that a true "common knowledge" statement is not "other evidence" likely to be prejudicial; see also *Heredia v. State*, supra at 853.

*Sanders v. State*, supra; *Heredia v. State*, supra. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that he was denied credit for time that he spent in jail prior to sentencing. The record reflects that his sentence is to begin on October 14, 1977, the date on which appellant was sentenced but does not include time that he served from:

November 23, 1976 to December 14, 1976
February 2, 1977 to February 9, 1977
June 18, 1977 to July 27, 1977

Appellant is correct in his assertion that the judgment and sentence should be reformed to give him credit for such back jail time. See, e. g., *Jones v. State*, 545 S.W.2d 771 (Tex.Cr.App.1975). Neither does the State oppose such relief. Appellant will also be eligible for consideration for "good-time" credit while he was incarcerated in the local jail insofar as his conduct record while therein incarcerated merits such consideration. See Article 42.03, § 4, V.A.C. C.P. The judgment and sentence will therefore be reformed to give appellant credit for the sixty-eight days alluded to above that he spent in the custody of the Sheriff of Bexar County.

As reformed, the judgment is affirmed.[7]

7. We have examined appellant's *pro se* brief and find the arguments contained therein to be without merit.