**William Brooks ARMSTRONG, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 6–92–017–CR.**

Court of Appeals of Texas, Texarkana.

March 23, 1993.

Frank Jackson, Dallas, for appellant.

Tom Wells, Dist. Atty. of Lamar County, Paris, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

CORNELIUS, Chief Justice.

William Brooks Armstrong was convicted of murder and assessed punishment at confinement for life.

On appeal, Armstrong brings three points of error, two of which contend that his motion for mistrial should have been granted because two jurors wrongfully withheld material information during the voir dire examination. In the remaining point, Armstrong contends that the trial court erred in admitting evidence of extraneous offenses. We overrule all these points and affirm the judgment.

First, Armstrong argues that the trial court should have granted his motion for new trial because the woman subsequently chosen to be the jury foreperson, Marilyn Thornburrow, and the county attorney, Tom Wells, failed to disclose during voir dire that they had a significant relationship to each other.

The trial judge asked the following questions during voir dire:

Now, are there any of you who have any—well, I will say are so well acquainted with Mr. Wells—I know that most of you know him ... or with Mr. Ashmore in his office, or Mr. Chuck Superville, that's another assistant, or Mr. Scott McDowell? They are the prosecution staff. Are there any of you who are so well connected with them or acquainted or associated with them that it might affect your verdict? I take it that there are none.

Are there any of you who have any special connection with the county attorney's office, perhaps a close friend in the office, secretary, investigator or the like?

No panel member responded affirmatively to either of the court's inquiries. The prosecuting attorney also asked the jury panel during voir dire:

Sometimes we fail to ask a questions (sic) that touches on your qualifications. My question to you at this time is is there anything that any of you can think of that touches on your qualifications not in just any case but in this specific case that you think needs to be pointed out to me and Mr. Jackson [defense attorney] and the court at this time? If so, raise your hand and you may want to approach the bench and tell it to the court out [of] the presence of the other jurors. If so, would you raise your hand at this time and let's talk about it.

Thornburrow did not respond to this question.

After the trial was over, Armstrong's counsel learned that Thornburrow knew the prosecutor, Wells; that Wells had been the best man at Thornburrow's wedding several years ago; and that Thornburrow's husband was at the time of the trial serving as the re-election campaign treasurer for Wells and had served in the same capacity in the 1988 campaign. Armstrong contends he was harmed because, if he had known of the relationship, he would have challenged Thornburrow for cause, or failing in that, he would have used a peremptory strike against her.

Armstrong argues that the questions by the trial judge and the prosecutor clearly required Thornburrow to respond and inform him of the relationship she had with the prosecutor. He relies on *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App. [Panel Op.] 1980), where the court stated:

The voir dire examination *is not* an exercise to test the ability of defense counsel to joust with a prospective juror

233

in an attempt to see what quantum of information he may or may not be withholding. The voir dire process *is* designed to insure, to the fullest extent possible, that an intelligent, alert, *disinterested, impartial,* and *truthful* jury will perform the duty assigned to it. *De La Rosa v. State,* 414 S.W.2d 668 (Tex. Cr.App.1967).

The court in *Jones* also said:

However, defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like. Unless defense counsel asks such questions, we must hold, as we do here, that the purportedly material information which a juror fails to disclose is not really "withheld" so as to constitute misconduct which would warrant a reversal.

*Jones v. State,* 596 S.W.2d at 137.

■ We believe the last quoted language from *Jones* is applicable here. Armstrong's counsel asked no question at voir dire touching on a relationship between a panelist and the prosecutor. The questions by the trial judge and the prosecutor that Thornburrow failed to affirmatively answer were subjective in nature and were such that no response was appropriate if she concluded that her acquaintance with the prosecutor would not affect her ability to be a fair juror. *See Decker v. State,* 717 S.W.2d 903 (Tex.Crim.App.1983); *Von January v. State,* 576 S.W.2d 43, 45 (Tex.Crim. App. [Panel Op.] 1978); *Salazar v. State,* 562 S.W.2d 480, 482 (Tex.Crim.App. [Panel Op.] 1978); *Herrera v. State,* 665 S.W.2d 497 (Tex.App.—Amarillo 1983, pet. ref'd).

In the hearing on the motion for new trial, Thornburrow testified that she believed the questions were intended to elicit whether she had some relationship with the prosecutor or his staff *which would cause her to be unable to give the defendant a fair and impartial hearing.* She said she believed that she could give Armstrong a fair trial and pointed out that in an earlier murder case prosecuted by Wells and in which she served as a juror, she had voted for, and the jury rendered, a "not guilty"

verdict because she believed that Wells had not proven his case. She also testified that she understood the judge's second question to refer to acquaintance with the prosecutor's auxiliary staff. Thornburrow indicated that if the question had been whether she knew or associated with Wells, she would have answered "yes," but since the questions were whether there was any relationship that would affect her ability to be impartial, she failed to respond because she felt she could be impartial. Armstrong does not claim that Thornburrow acted improperly during jury deliberations.

■ The trial judge is the trier of fact at the hearing on a motion for new trial, and his findings will not be disturbed absent a showing that he abused his discretion. *Jones v. State,* 596 S.W.2d at 138; *Herrera v. State,* 665 S.W.2d at 500. As noted earlier, defense counsel did not ask questions about the panelists' acquaintance with the prosecutor. In this respect, the trial judge and the prosecutor asked only if there was anything that would adversely affect the panelists' impartiality. In these circumstances, Thornburrow did not withhold information, and the trial judge properly denied the motion for new trial.

The Court of Criminal Appeals vacated our original opinion in this cause and remanded the case to this Court with instructions to address the issue of whether the prosecutor had an affirmative duty to disclose during the voir dire process his relationship with Thornburrow. *Armstrong v. State,* 845 S.W.2d 909 (Tex.Crim.App.1993).

■ We now consider that contention. Armstrong cites only two authorities in support of his argument. The first of these, Ethical Consideration 7–13, was formerly a part of Canon 7 of the Texas Code of Professional Responsibility. State Bar Rules, art. X, § 9, EC 7–13 (Texas Code of Professional Responsibility. Effective January 1, 1990, more than a year prior to the trial in the instant case, Article 10, § 9 of the Disciplinary Rules of Professional Conduct was adopted, and the former Code of Professional Responsibility was repealed. TEX.DISCIPLINARY R.PROF. CONDUCT 3.09 (1989), *reprinted in* TEX.GOV'T CODE ANN.,

tit. 2, subtit. G app. (Vernon Supp.1993) (STATE BAR RULES art. X, § 9), prescribes the special responsibilities of a prosecutor. The new rule does not support Armstrong's claim that the prosecutor had a duty in this instance to volunteer information about his acquaintance with a prospective juror.

■ Armstrong also cites TEX.CODE CRIM. PROC.ANN. art. 2.01 (Vernon Supp.1993). That article provides, in relevant part, that the primary duty of all prosecuting attorneys is not to convict but to see that justice is done. This language was also contained in former Ethical Consideration 7–13. We are not convinced that the conduct of the prosecutor in this case was contrary to Article 2.01. Armstrong has cited no authority holding that a prosecutor under circumstances as in this case has a duty to volunteer information that defense counsel could have easily obtained by simply asking panel members if any of them knew the prosecutor, and if so, under what circumstances.

Armstrong's reliance on the case of *Implement Dealers Mutual Ins. Co. v. Castleberry*, 368 S.W.2d 249 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.), is misplaced. In that civil case, the defendant moved for a mistrial after the plaintiff's attorney informed the defendant's attorney that he had once represented one of the jurors in a prior case. The court noted that the defendant's counsel had a right to know the information, but denied the motion for mistrial because the defendant's attorney had the information during voir dire but did not challenge the potential juror. *Id.* at 254–55. The court noted that such information comes from the attorney, rather than the juror, in many instances, but the court did not impose a duty on the plaintiff's attorney, as opposed to the potential juror, to reveal the relationship. The case does not support Armstrong's claim that an affirmative duty existed in this case.

If Armstrong's counsel had asked the panel members whether any of them knew the prosecutor and, if so, to describe the relationship, Thornburrow would have been bound to answer affirmatively and to describe her relationship. The trial judge, in addressing the jury before voir dire, noted that many of the panel members probably knew the prosecutor, who had held office for many years. This put defense counsel on notice to inquire into the possibility of such acquaintance.

The prosecutor testified at the hearing on the motion for new trial that he believed Thornburrow truly and accurately answered all questions posed to her and that she could be fair and impartial. Thornburrow testified that in a prior trial she had voted for acquittal in a criminal case prosecuted by the same prosecutor because she felt that he had not proved the guilt of the defendant beyond a reasonable doubt. Thornburrow also testified that she had fully and correctly answered every question asked of her and that she could be a fair and impartial juror. It is significant that Armstrong has not contended that Thornburrow was not impartial. He claims only that he was deprived of the opportunity to exercise his challenges because he was unaware that a relationship existed. We note again that defense counsel was not deprived of an opportunity to question the juror after having been put on notice by the trial court that jurors probably knew the prosecutor.

Next, Armstrong argues that the trial court should have granted him a new trial because juror Stephens failed to disclose during voir dire that she had prior knowledge of the case. At the hearing on Armstrong's motion for new trial, June Brown, who was on the panel but who was not selected to serve as a juror (she was a tenant of Armstrong's mother), testified that Stephens indicated to her in a conversation during voir dire that she had knowledge of the case that she had not revealed in response to voir dire questions.

Brown testified about various statements she said Stephens made to her during voir dire and in a telephone conversation when Brown called Stephens at her home during the trial. Stephens testified and denied that she made the statements. Three other witnesses also testified, including one who said that Brown could not have called Ste-

phens at her home because during the trial she stayed with another person in Paris, Texas. The trial judge was thus presented with conflicting testimony on the issue of jury misconduct.

■ The trial judge, as the trier of fact, was free to disbelieve Brown's testimony and to believe that of the other witnesses. *McCartney v. State*, 542 S.W.2d 156, 162 (Tex.Crim.App.1976). Issues of fact as to jury misconduct raised at a hearing on a motion for new trial are determined by the trial judge, and when there is conflicting evidence, as in this case, there is no abuse of discretion in denying the motion for new trial. *Id.*

Lastly, Armstrong contends that the trial court abused its discretion by admitting extraneous offenses in violation of TEX. R.CRIM.EVID. 403 and 404(b).

All relevant evidence is admissible unless otherwise provided by constitution, statute, or rules. TEX.R.CRIM.EVID. 402. Relevant evidence is that having a tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. TEX.R.CRIM.EVID. 401. Even though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or if it would cause undue delay or needless presentation of cumulative evidence. TEX.R.CRIM.EVID. 403. Evidence of a character trait is not admissible for the purpose of proving that a person acted in conformity with the trait on a particular occasion, except as allowed by TEX.R.CRIM. EVID. 404. Such evidence may, however, be admissible for *other* purposes, as to show absence of mistake or accident. TEX. R.CRIM.EVID. 404(b).

Armstrong testified that he shot Beth Randle either in self-defense or as a result of an accident; that Randle entered the bedroom where he was lying on the bed and struck him on the head with a handgun; that he and Randle struggled and he tried to take the gun from her; that Randle resisted and, although he tried as hard as he could, he was unable to take the gun

from her; that during the struggle the gun went off and the bullet struck Randle; that he was approximately six feet one inch tall and weighed 200 pounds at the time of the struggle; that he had been a boxer for many years, both in his youth and while in the Navy; and that he had won most of the boxing matches in which he was involved. There was evidence that Randle was five feet seven inches tall and weighed 124 pounds.

■ In rebuttal and not in its case in chief, the State called three witnesses. The prosecutor indicated to the court that he was calling Mary Melton, Armstrong's former girlfriend, not to show that Armstrong acted in conformance with some prior conduct, but rather to rebut the defensive theories of accident or mistake. Melton testified that several years before the incident in question, and in the same bedroom, Armstrong had pointed a .357 magnum revolver at her, cocked it, began squeezing the trigger, and told her he was going to kill her; that she slapped his hand away from her, and the gun fired into the dresser; that Armstrong then went to the back bedroom and threatened to kill Melton's children with the gun; and that Armstrong eventually allowed her and her children to leave.

■ The prosecutor next called Daryl Berry, a friend of Armstrong, for the limited purpose of showing Armstrong's strength, in rebuttal of Armstrong's testimony that he was unable to subdue Randle or to take the handgun away from her. Berry testified that he was six feet six inches tall and weighed 220 pounds; that a month before the shooting in question, Armstrong came to his house, grabbed him, picked him up, and threw him across the hallway; that he had known Armstrong for many years; and that Armstrong was a very strong man.

The State also recalled Gayla Emeyabbi as a rebuttal witness for the limited purpose of showing Armstrong's strength. Emeyabbi testified that Armstrong came into a bar in New Boston, Texas, in June of 1991 and became involved in a confronta-

tion with another customer, Terry Sinclair, who objected to Armstrong's addressing another customer, a Choctaw Indian, as "Chief" and "Big Chief," rather than by his name. Emeyabbi testified that Armstrong then grabbed Sinclair, a small man about five feet five inches tall and weighing approximately 128 pounds, and pulled his arm back as far as it would go; that he did this several times; and that Sinclair was unable to break free from Armstrong's grip for a period of five to seven minutes.

When the State announced its intention to call the rebuttal witnesses, Armstrong objected on the ground that the testimony would violate TEX.R.CRIM.EVID. 403 and 404(b) and the holding of the court in *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim. App.1990). The trial court overruled the objection, concluding that the evidence involved was relevant and that its probative value outweighed any prejudice to the defendant.

 The trial court gave a limiting instruction concerning the testimony of the rebuttal witnesses. A trial court has discretion to exclude or admit evidence, and an appellate court should not set aside its rulings absent an abuse of discretion. *Cadoree v. State*, 810 S.W.2d 786 (Tex.App.— Houston [14th Dist.] 1991, pet. ref'd), *citing Montgomery v. State*, 810 S.W.2d 372. When the accused raises the issue of self-defense or accident, the State may introduce evidence of prior violent acts by the accused in order to show his intent. *Halliburton v. State*, 528 S.W.2d 216 (Tex.Crim. App.1975); *Yarbough v. State*, 753 S.W.2d 489 (Tex.App.—Beaumont 1988, no pet.); *Fielder v. State*, 683 S.W.2d 565 (Tex. App.—Fort Worth 1985), *rev'd on other grounds*, 756 S.W.2d 309 (Tex.Crim.App. 1988).

When the State announced that it intended to call the rebuttal witnesses, Armstrong objected that the evidence was inadmissible under Rule 404(b) and Rule 403. The prosecutor advised the court that he was calling the witnesses for the limited purpose of rebutting Armstrong's claim of being physically unable to wrest the gun away from Randle and his claim that, if he

shot her, it was in self-defense or was accidental. The proposed testimony thus had relevance apart from its tendency to prove character, i.e., to rebut Armstrong's defensive theories of mistake or accident or self-defense pursuant to Rule 404(b). The court instructed the jury that the evidence was limited to the purpose expressed by the State. This procedure met the requirements set out in *Montgomery v. State*, 810 S.W.2d at 387–88. Accordingly, the court did not err in admitting the rebuttal evidence for the limited purpose set forth by the State and by the court in its instruction.

The judgment of the trial court is affirmed.