In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00049-CR
______________________________


NATALIE MICHELLE WHITE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 32150-A


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            On Wednesday, August 18, 2004, sixteen-year-old Natalie Michelle White drove her car into
oncoming traffic on Loop 281 in Longview, Texas, and crashed into the vehicle in which eighteen-year-old Lauren Frazier was riding. White was taken to a hospital as a result of injuries she
sustained; Frazier, who had planned to leave for her first year at Baylor University the following
morning, died an hour after the crash. Police had White's blood drawn at the hospital for purposes
of alcohol testing. See Tex. Transp. Code Ann. § 724.012 (Vernon Supp. 2005). Test results later
revealed White's blood alcohol contained .19 grams of alcohol per 100 milliliters of blood, an
amount greater than twice the legal limit for persons over the age of twenty-one. See Tex. Pen.
Code Ann. § 49.01(2)(B) (Vernon 2003).
            The State charged White with intoxication manslaughter and sought to have her case
transferred from juvenile court to district court. See Tex. Fam. Code Ann. § 54.02 (Vernon 2002). 
White did not oppose the transfer.


 White pled guilty to the charge December 8, 2004, and a petit
jury was empaneled to determine White's punishment. After hearing evidence and argument
December 15, 2004, the jury assessed White's sentence at nine years' imprisonment, but did not grant
community supervision. The trial court formally sentenced White in accordance with the jury's
verdict January 3, 2005. 
            White filed a motion for new trial, and the trial court conducted a hearing on the motion. The
trial court overruled White's motion for new trial March 10, 2005. White now appeals, raising five
issues. For the reasons stated below, we affirm the trial court's judgment.
I.         Did the Trial Court Abuse Its Discretion By Denying White's Motion for New Trial?
            In one point of error, White presents the following, which we set forth exactly as written in
White's brief on appeal:
The Trial Court erred in denying Ms. White's Motion for New Trial because four of
the twelve jurors should never have been seated: two jurors were absolutely
disqualified under Tex. Code Crim. P. 35.19, while two other jurors failed to respond
to voir dire questions, misrepresenting their background and biases. Each of these
four errors was sufficient to require a new trial. The cumulative effect of the four
errors also required a new trial.
  
We interpret the central focus of this issue as a challenge to the trial court's ruling on White's motion
for new trial.
            The standard that we must use to review a ruling on a motion for new trial is well settled: 
abuse of discretion. See Lewis v. State, 126 S.W.3d 572, 579 (Tex. App.—Texarkana 2004, pet.
ref'd). "We do not substitute our judgment for that of the trial court, but rather we decide whether
the trial court's decision was arbitrary or unreasonable." Acosta v. State, 160 S.W.3d 204, 210 (Tex.
App.—Fort Worth 2005, no pet.) (citing Charles v. State, 146 S.W.3d 204, 208 (Tex. Crim. App.
2004)). Therefore, while we ultimately may not have made the same decision as the trial court had
we presided at the trial proceedings, we must nonetheless view the evidence presented at the hearing
on the motion for new trial in the light most favorable to the trial court's ruling, and we will hold a
trial court has abused its discretion in ruling on a motion for new trial only when no reasonable view
of the record could support the lower court's ruling. Acosta, 160 S.W.3d at 210.
            White raises two subissues in support of her contention that the trial court erred by denying
her motion for new trial: (A) jurors Vernessia Giddings and Lamar Fredell Jones were "absolutely"
disqualified from jury service by Article 35.19 of the Texas Code of Criminal Procedure; and
(B) jurors Roosevelt Evers and Mona Williams failed to respond to voir dire questions about their
backgrounds and biases, and, therefore, engaged in juror misconduct that necessitates granting a new
trial.
            A.        Giddings and Jones Were Absolutely Disqualified, But White Has Not Shown
Harm.

            The record before us shows both Giddings and Jones had misdemeanor theft by worthless
check charges pending at the time they sat on White's jury. Either the defense or the State may
challenge a prospective juror for cause if that member of the venire panel is "under indictment or
other legal accusation for misdemeanor theft or a felony[.]" Tex. Code Crim. Proc. Ann. art.
35.16(a)(3) (Vernon Supp. 2005). A panel member who appears to be under such legal accusation
should not be empaneled absent consent from both parties. Tex. Code Crim. Proc. Ann. art. 35.19
(Vernon 1989). Because our law requires the trial court to exclude panel members who have theft
charges pending against them at the time they are called to jury service, White asserts the trial court
erred by denying her motion for new trial. 
            "A conviction in a criminal case may be reversed on appeal on the ground that a juror in the
case was absolutely disqualified from service under Article 35.19 . . . only if: (1) the defendant
raises the disqualification before the verdict is entered; or (2) the disqualification was not discovered
or brought to the attention of the trial court until after the verdict was entered and the defendant
makes a showing of significant harm by the service of the disqualified juror." Tex. Code Crim.
Proc. Ann. art. 44.46 (Vernon Supp. 2005). In this case, White did not raise this issue at the trial
court level until after the jury had returned its verdict. Therefore, White was required to show at the
hearing on her motion for new trial that she suffered "significant harm" as a result of the service of
the suspect jurors. 
            The trial court's denial of White's motion for new trial indicates the court below concluded
White had not met her burden of showing "significant harm" directly attributable to the service of
the suspect jurors. Accordingly, if any reasonable view of the evidence supports the trial court's
conclusion that White did not meet this burden, the standard of appellate review requires us to affirm
the trial court's ruling. Accord Ford v. State, 129 S.W.3d 541, 548–49 (Tex. App.—Dallas 2003,
pet. ref'd) (concluding trial court's decision was not "arbitrary" or "unreasonable" in concluding juror
did not lie during voir dire; denial of motion for new trial affirmed).
            A defendant's conviction and sentence does not alone constitute a showing of "significant
harm" required by Article 44.46 of the Texas Code of Criminal Procedure. State v. Read, 965
S.W.2d 74, 77 (Tex. App.—Austin 1998, no pet.); Hernandez v. State, 952 S.W.2d 59, 71 (Tex.
App.—Austin 1997), rev'd on other grounds, 957 S.W.2d 851 (Tex. Crim. App. 1998). Instead, the
record from the post-trial hearing must demonstrate the defendant's alleged substantial harm is
directly attributable to the service of the objectionable jurors. See, e.g., Perez v. State, 11 S.W.3d
218, 221 (Tex. Crim. App. 2000); Perez v. State, 41 S.W.3d 712, 716 (Tex. App.—Corpus Christi
2001, no pet.) (opinion on remand); Ristoff v. State, 985 S.W.2d 623, 623–24 (Tex. App.—Houston
[1st Dist.] 1999, no pet.).
            The facts in the case now before us most closely parallel those presented to the First Court
of Appeals in Ristoff. There the appellant was convicted under the Texas Clean Air Act of three
misdemeanor offenses of outdoor burning. Ristoff asserted he was entitled to a new trial because
one of the jurors in his case was under indictment for welfare fraud. Ristoff, 985 S.W.2d at 623. The
State did not dispute the status of the objected-to juror's indictment, and the record was also clear
that the juror was unaware of the indictment at the time of Ristoff's trial. Id. at 623–24. On appeal,
the First Court of Appeals noted "at the hearing on appellant's motions [for new trial], appellant
made no attempt to show significant harm, nor is any apparent." Id. at 624. The appellate court then
held Ristoff had failed to meet his burden of proof on appeal, and the court overruled his point of
error. Id.
            In the case now on appeal, White has not cited this Court to any evidence in the record that
demonstrates she suffered harm as a direct result of Giddings and Jones' jury service. However, after
reviewing the entire record of the hearing on the motion for new trial, we find there is no evidence
that Giddings' and Jones' jury service directly caused White "significant harm." Moreover, the trial
court heard testimony that both Giddings and Jones were unaware of the pending criminal charges. 
Viewing this evidence in the light most favorable to the trial court's ruling, as we must, this evidence
would support the court's conclusion that White did not suffer any direct harm, let alone "substantial
harm," that could be attributable to the fact Giddings and Jones had charges pending against them
at the time of their jury service. Accordingly, we cannot say the trial court acted arbitrarily or
unreasonably by overruling White's motion for new trial on the basis of Giddings' and Jones' jury
service.
            B.        Jurors Williams and Evers Did Not Engage in Misconduct Requiring a New
Trial.

            White next asserts the trial court erred in overruling her motion for new trial because the
record purportedly shows jurors Williams and Evers did not truthfully answer questions during voir
dire. This lack of candor, according to White, resulted in juror misconduct that should entitle her
to a new trial. Because the alleged misconduct occurred during voir dire, the trial court was required
to determine (1) whether the juror or jurors withheld information, (2) whether the withheld
information was material,


 and (3) whether White used due diligence in eliciting the withheld
information omitted by the juror or jurors during voir dire. See Franklin v. State, 138 S.W.3d 351,
355–56 (Tex. Crim. App. 2004). On appeal, we review the trial court's ruling for abuse of discretion. 
See Ford, 129 S.W.3d at 547–49 (applying abuse of discretion during appellate review of denial of
new trial based on allegedly withheld voir dire information).
            1.         Williams
            White first argues juror Mona Williams failed to inform the litigants during voir dire that she
had been the victim of a drunk driver. White's brief on appeal focuses on Williams' alleged failure
to respond to a question posed by the trial court during its voir dire of the panel: 
[Trial Court]:Is there anyone on the panel -- and again, I just want a show of hands
-- who has experienced a situation where either a close friend or a family member was
seriously injured or a death was caused due to an intoxicated driver?

(Emphasis added.) The record before us does not show Williams responded affirmatively to the trial
court's question. Nor does the record reveal that Williams, at any other time during voir dire,
informed the parties or the court that she had been the victim of a drunk driver. However, at the
hearing on White's motion for new trial, both Giddings and John Moyers (another juror) testified,
without objection, they had heard juror Williams tell others, before deliberating, that she had been
the victim of a drunk driver. 
            At oral argument, White asserted that the trial court's use of the phrase "family member"
necessarily includes the individual to whom that question is being asked, and because Williams did
not respond regarding her personal victimization, she withheld material information during voir dire. 
We cannot say that it would be unreasonable for a jurist to disagree; that is to say, it is not arbitrary
or unreasonable for a reasonable jurist to interpret the trial court's question as one that seeks
information about persons (friends or family) to the exclusion of the person to whom the question
is being asked. Therefore, we cannot say that no reasonable view of the record supports the trial
court's decision. 
            Further, the Texas Court of Criminal Appeals has "long insisted" trial counsel "ask specific
questions, not rely on broad ones," to satisfy the duty to use due diligence in uncovering bias during
voir dire. Gonzales v. State, 3 S.W.3d 915, 917 (Tex. Crim. App. 1999) (citing Brandon v. State,
599 S.W.2d 567, 578 (Tex. Crim. App. 1979)); see also Brasher v. State, 139 S.W.3d 369, 373–74
(Tex. App.—San Antonio 2004, pet. ref'd). In the case now before us, the trial court did not
specifically ask whether any members of the panel had themselves been a victim of a drunk driver. 
Nor did the State or the defense ask such a specific question. Had such a direct, specific question
been asked, and had Williams then failed to answer, then the record would reflect juror misconduct. 
Accord Jones v. State, 596 S.W.2d 134 (Tex. Crim. App. [Panel Op.] 1980).


 In this case, however,
the record does not so reflect misconduct.
            At best, White's point of error on appeal is an attempt to rely on a broad-form question that,
when reasonably examined on appeal, did not directly seek to elicit the allegedly withheld
information. Cf. id. Accordingly, because the record does not demonstrate that Williams withheld
information or that White exercised the requisite due diligence by asking any specific, direct question
that would have elicited the now-complained-of information, and because White is not entitled to
rely on broad-form questions to meet the due diligence requirement, we cannot say the trial court
abused its discretion by overruling White's motion for new trial on the basis of Williams' jury
service.
            2.         Evers
            White next asserts Evers engaged in misconduct by failing to disclose his prior misdemeanor
convictions for assault and terroristic threat. During its voir dire, the State asked:
There are those of you who have had an interest in the outcome of a criminal case. 
Les Ferguson, I know your brother was involved in a matter, and I know you cared
about what happened in that case and your brother did, too. So I'll point that out that
you may have family, you may have friends that were victims in a case. You may
also have a situation where you had someone close to you that was a defendant in a
case. If there's any situation like that and we haven't asked it, would you raise your
hand now and we'll deal with that individually?

(Emphasis added.) The record shows only one panel member raised his hand, and that person was
not Evers. At the hearing on White's motion for new trial, certified documents were admitted into
evidence showing Evers had been convicted of two different misdemeanors, assault and terroristic
threat. White now argues, "Mr. Evers' choice to withhold that information from the court and the
parties, in violation of his oath, requires a new trial in this case." 
            At oral argument, White suggested that a reasonable interpretation of the State's question
would include the prospective jurors themselves within the breadth of the phrases "family" or
"friends" and, thus, Evers had an obligation to inform the parties about his criminal convictions. 
However, a different—equally logical interpretation—of the State's question is that it concerned only
whether family members or friends (not the panelists themselves) had an interest in the outcome of
a criminal case. The question regarding a "defendant in a case" clearly referred to third persons
("someone close to you"). Thus, to the extent that the trial court could have reasonably concluded
the State's question was not designed to elicit the specific information allegedly withheld by Evers,
we cannot say the trial court's ruling was arbitrary or unreasonable.
            Additionally, neither the parties nor the trial court asked the veniremembers whether they had
ever been charged or convicted of any crime above a class C misdemeanor. White did ask the panel
members if they knew anyone who had been on community supervision, and apparently, a large
number of people raised their hands. However, the record before us does not show White followed
up that question with further individual questioning of each member of the panel who had raised his
or her hand regarding the substance of each person's affirmative response to having known someone
who had been on community supervision. Thus, we cannot tell from this record that Evers ever
affirmatively withheld any such information. The record before us does not indicate which
veniremembers raised their hands, nor does the record demonstrate White probed further into these
responses by asking more specific questions of each panelist. See Gonzales, 3 S.W.3d at 917
("counsel must ask follow-up questions afer uncovering potential bias"). 
            Accordingly, as the record does not demonstrate that Evers withheld information or that
White exercised due diligence in attempting to elicit the complained-of information from Evers, and
as White is not entitled to rely on broad-form questions in lieu of specific questions to demonstrate
she exercised due diligence, we must conclude the trial court did not err in overruling the motion for
new trial. This point of error is overruled.
II.       Must a Trial Court Have a PSI Prepared for the Jury's Consideration?
            White contends the trial court erred by not ordering the preparation of a presentence
investigation (PSI) report until after the jury had assessed White's sentence. Article 42.12, Section
9(a) of the Texas Code of Criminal Procedure requires a judge in a felony case to order that a PSI
report be prepared "before the imposition of sentence." Tex. Code Crim. Proc. Ann. art. 42.12,
§ 9(g) (Vernon Supp. 2005). White filed a motion for a PSI report December 8, 2004. In ordering
a PSI report, the record before us clearly shows the trial court waited to act on White's motion until
after the jury returned its punishment verdict. On appeal, White cites Whitelaw v. State, 29 S.W.3d
129, 132 (Tex. Crim. App. 2000), and contends the trial court is always required to order a PSI report
when requested by a defendant, even if the defendant is not eligible for community supervision.


 
White then argues that, because only the jury had the authority to grant community supervision in
this case (based on her submission to the jury of the issue of punishment), the PSI report should
have been prepared before trial and made available to the jury. White contends the PSI report would
have provided the jury with additional, necessary information regarding the suitability of community
supervision as an appropriate punishment because PSI reports generally include suggestions about
the restrictions that could be imposed by the trial court, information about rehabilitation programs
that would have been available to White through community supervision, as well as facts about other
facets of community supervision. 
            Article 42.12, Section 9(g) of the Texas Code of Criminal Procedure provides, "A judge is
not required to direct an officer to prepare a presentence report in a felony case under this section
if: (1) punishment is to be assessed by a jury . . . ." Tex. Code Crim. Proc. Ann. art. 42.12, § 9(g). 
While Section 9(g) does not expressly forbid the preparation of a PSI report, nor the publishing of
a PSI report to a jury, the Legislature has not expressed a clear intent to require a PSI report for a
jury's use in assessing punishment. Nor will we overreach our authority by imposing such a
requirement. This point of error is overruled.
III.      Did the Trial Court Violate White's Sixth Amendment Right to Counsel By Allowing
a Part of the Trial To Be Conducted Without Her Presence?

            White also contends the trial court erroneously permitted part of the trial to be conducted
without White's presence. The record shows David Brabham, judge of the 188th Judicial District
Court of Gregg County, was in charge of initially greeting all the jurors who had received a jury
summons for the week of December 13, 2004. It was then Judge Brabham's job to divide that
general assembly into smaller panels, which would then be sent to the various trial courts for jury
selection in the individual cases. Before dividing the prospective jurors into panels, it was also
Judge Brabham's job to qualify each prospective juror within this assembly. Only after completing
that task did Judge Brabham send the smaller panels to the various trial courts. 
            During the initial qualification proceedings, Judge Brabham apparently had several individual
conversations with various prospective jurors. One of those with whom he talked was Giddings. 
According to Giddings' testimony at the hearing on White's motion for new trial, Giddings told
Judge Brabham that she had been previously charged with theft by worthless check, but that she also
told the judge that she believed those charges had been dismissed. This conversation between Judge
Brabham and Giddings was not recorded, preserved, or transcribed for this appeal.
            Texas law provides:
In all prosecutions for felonies, the defendant must be personally present at
the trial, and he must likewise be present in all cases of misdemeanor when the
punishment or any part thereof is imprisonment in jail; provided, however, that in all
cases, when the defendant voluntarily absents himself after pleading to the indictment
or information, or after the jury has been selected when trial is before a jury, the trial
may proceed to its conclusion.

Tex. Code Crim. Proc. Ann. art. 33.03 (Vernon 1989). Nonetheless, the Texas Court of Criminal
Appeals has repeatedly held that "[t]he general assembly portion of jury selection is not considered
part of 'the trial' and therefore the accused is not entitled to be present." Jasper v. State, 61 S.W.3d
413, 423 (Tex. Crim. App. 2001) (citing Moore v. State, 999 S.W.2d 385, 399 (Tex. Crim. App.
1999); Chambers v. State, 903 S.W.2d 21, 31 (Tex. Crim. App. 1995)). The "general assembly"
portion of the proceedings is not considered part of an accused's trial "because 'prospective jurors
who are summoned to a general assembly have not been assigned to any particular case [and] [t]he
judge presiding over the general assembly is assigned for that purpose only at that time and has no
given case in mind.'" Jasper, 61 S.W.3d at 423 (quoting Chambers, 903 S.W.2d at 31).
            In the case now before us, White's complaint concerns a conversation that took place during
the general assembly of all prospective jurors. Because neither our constitution nor our statutes
mandate White's presence at these proceedings, no error has been shown. Cf. Moore, 999 S.W.2d
at 399. We overrule this point of error.
IV.      Is Rule 606(b) of the Texas Rules of Evidence Unconstitutional As Applied to White?

            White further contends Rule 606(b) of the Texas Rules of Evidence is unconstitutional as
applied in her case because Rule 606(b) prevented her from presenting evidence that might otherwise
show she suffered "significant harm to the jury service of Williams, Jones, Evers, and Giddings." 
The rule at issue states:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as
to any matter or statement occurring during the jury's deliberations, or to the effect
of anything on any juror's mind or emotions or mental processes, as influencing any
juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit
or any statement by a juror concerning any matter about which the juror would be
precluded from testifying be admitted in evidence for any of these purposes. 
However, a juror may testify: (1) whether any outside influence was improperly
brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified
to serve.

Tex. R. Evid. 606(b) (emphasis added). The United States Supreme Court (interpreting Federal
Rule 606(b)), the Texas Supreme Court, and this Court have each previously addressed the
constitutionality of Rule 606(b). Each time, Rule 606(b) has been held constitutional. 
            A.        The Federal Counterpart to Tex. R. Evid. 606(b) Has Not Been Held
Unconstitutional.

            In Tanner v. United States, 483 U.S. 107 (1987), the United States Supreme Court reviewed
whether a trial court had erred by excluding evidence of alleged juror misconduct pursuant to Fed.
R. Evid. 606(b). Tanner and his codefendants were convicted of mail fraud and conspiring to
defraud the United States. Id. at 109–10. Tanner introduced evidence from jurors at the hearing on
his motion for new trial that some jurors had consumed alcohol, used marihuana, and consumed
cocaine during the course of the trial. Id. at 113–16. The trial court held the jurors' affidavits
regarding the drug and alcohol use were inadmissible. Id. at 115. After reviewing the legislative and
cultural histories of Rule 606(b), as well as the public policy arguments in favor of Rule 606(b)'s
exclusion of juror testimony regarding deliberations, Justice O'Connor, writing for the majority,
disagreed with Tanner's contention that the Constitution should compel the trial court to allow
Tanner to present juror testimony about alleged drug and alcohol abuse by jurors. Id. at 116–17, 127. 
In reaching this conclusion, Justice O'Connor noted that the parties may still "seek to impeach the
verdict by nonjuror evidence of misconduct." Id. (referencing United States v. Taliaferro, 558 F.2d
724, 725–26 (4th Cir. 1977) (trial court considered records of club where jurors dined and testimony
of bailiff who accompanied jurors)).


 
            B.        The Texas Supreme Court Has Held Tex. R. Evid. 606(b) To Be Constitutional.

            In Golden Eagle Archery, Inc. v. Jackson, 24 S.W.3d 362, 364 (Tex. 2000), the issue
presented was "whether procedural and evidentiary rules may constitutionally prohibit jurors from
testifying post-verdict about statements made during deliberations, unless such statements concern
outside influences." Jackson had sued Golden Eagle Archery and several other defendants for
injuries he sustained while drawing back the string of a compound bow. Id. The jury found Jackson
forty-five percent at fault for the injuries, and the trial court awarded Jackson approximately
$26,700.00 in damages based on the jury's verdict. Id. Jackson filed a motion for new trial alleging
juror misconduct and submitted affidavits from several jurors, the substance of which concerned
statements made by several of the jurors during deliberations. Id. at 364–65. The trial court held
the affidavits were incompetent under the civil rules of evidence and overruled Jackson's motion for
new trial. Id. at 366. On petition for review, the Texas Supreme Court examined the various public
policies in support of Rule 606(b), as well as the rule's foundation in Lord Mansfield's prohibition
against post-verdict attacks via juror testimony. Id. at 367. The Golden Eagle court ultimately
concluded, "[W]hile failure to disclose bias is a form of juror misconduct that justifies a new trial
under the appropriate circumstances, proof of a juror's failure to disclose bias must come from some
source other than a fellow juror's testimony about deliberations." Id. at 371. The Texas Supreme
Court thus held:
Rules 327(b) and 606(b) do not deprive the litigants of a fair trial under the Texas
Constitution, nor do they fail to afford litigants due process. The rules are designed
to balance concerns about the threat of jury misconduct with the threat from post-verdict juror investigation and impeachment of verdicts.

Id. at 375. 
            C.        This Court and Other Texas Courts of Appeals Have Held Rule 606(b) To Be
Constitutional.

            This Court has previously held the current Rule 606(b) is not unconstitutional. In Hines v.
State, 3 S.W.3d 618, 620 (Tex. App.—Texarkana 1999, no pet.), the appellant filed a motion for new
trial alleging juror misconduct. Hines attached to his motion an affidavit from one of the jurors; the
affidavit stated at least two members of the jury had discussed the impact of parole law on any
punishment Hines might receive. Id. This Court then reviewed the history of Rule 606(b), the
competing public policy issues supporting such a rule, and the effects Rule 606(b) would have on
the rights of an appellant attempting to show harm arising from jury misconduct. Id. at 622–23. 
Ultimately, this Court determined Tex. R. Evid. 606(b) properly balanced the public's need to protect
the sanctity of jury deliberations against the needs of an appellant trying to pry into the minds of
jurors during post-verdict proceedings. This Court then overruled Hines' constitutional challenge.
            Similarly, other courts of appeals have upheld Rule 606(b). See, e.g., Easly v. State, 163
S.W.3d 839, 842 (Tex. App.—Dallas 2005, no pet.) (Rule 606(b) prohibits trial court from
considering juror affidavits at hearing on motion for new trial; such affidavits are incompetent
evidence to support granting of motion for new trial); State v. Ordonez, 156 S.W.3d 850, 852 (Tex.
App.—El Paso 2005, no pet.) (trial court erred by granting motion for new trial based solely on juror
affidavits concerning deliberations; such evidence was incompetent; award of new trial reversed);
State v. Lewis, 151 S.W.3d 213, 219–20 (Tex. App.—Tyler 2004, pet. ref'd) (trial court erred in
granting new trial where sole basis was juror affidavit regarding consideration of how parole would
apply to defendant's sentence; affidavit not competent evidence under Rule 606(b)); Sanders v. State,
1 S.W.3d 885, 887 (Tex. App.—Austin 1999, no pet.) ("606(b) unquestionably makes proving jury
misconduct in criminal trials more difficult than it was under prior rules. But the rule does not
preclude proof of jury misconduct by other means, such as through the testimony of a nonjuror with
personal knowledge of the misconduct.").
            D.        Rule 606(b) Is Not Unconstitutional As Applied to White in this Case.
            During the hearing on White's motion for new trial, White attempted to ask Jones, "Did you
also begin to discuss what you believed to be the appropriate punishment in this case [during the
jury's deliberations]?" (Apparently White was trying to show that juror Williams had been
previously involved in an accident with a drunk driver, that the person had not been punished, and
that Williams had failed to disclose this alleged bias during voir dire.) The State objected to White's
question, stating the question was prohibited by Tex. R. Evid. 606(b). The trial court sustained the
State's objection. White asserted that, under Nelson v. State, which requires her to show she suffered
significant harm as a result of an absolutely disqualified juror's service, she must be allowed to
inquire into the jury's deliberations to show such harm; White's counsel further stated, "If the Court
does not allow us to do this, we are being denied due process under the Federal Constitution, as well
as due course of law under both the Code of Criminal Procedure and the Texas Constitution . . . ." 
The trial court continued to sustain the objection. The trial court further denied White the
opportunity to have the witness testify to the same evidence as part of a bill of exceptions to the trial
court's ruling. The trial court held that allowing the bill of exceptions would be tantamount to
permitting the witness to testify, and such was expressly prohibited under the Rules of Evidence. 
            The record before us suggests White had planned to call juror Williams to testify about her
deliberations with the other jurors. Pursuant to Rule 606(b), the State objected to any such
testimony, an objection the trial court sustained (but only to the extent Williams might testify about
jury deliberations, and not as to matters outside evidence otherwise prohibited by Rule 606). White
again challenged the constitutionality of Rule 606(b) as applied in her case and asked to be allowed
to present evidence in a bill of exceptions, a request the trial court denied. A similar attempt to
discuss jury deliberations occurred during the testimony of Giddings and John Moyers. The State
objected, citing Rule 606(b); the court sustained the State's objections; and the court further
prohibited White from soliciting testimony from the prospective witnesses about jury deliberations. 
            Rule 606(b) of the Texas Rules of Evidence was changed to its present text and became
effective March 1, 1998. Sanders, 1 S.W.3d at 887. In commenting on the new rule, Cathleen C.
Herasimchuk (now Judge Cochran) wrote:
The 1998 version of Rule 606(b) apparently wipes out Buentello, and all of its
progeny. Henceforth, the same rule that has applied to offering the testimony or
affidavits of jurors in Texas civil cases will apply to criminal cases. . . . This is a
dramatic change in criminal proceedings. . . . The new rule is a vast improvement
over the former Criminal Rule 606(b) which threw open the door of the jury room too
widely, but it remains to be seen whether the revised Rule 606(b) has closed shut the
jury deliberation room too firmly in criminal cases.

Cathleen C. Herasimchuk, Texas Rules of Evidence Handbook, Rule 606(b), at 558–59 (3d ed. 1998)
(as quoted in Sanders, 1 S.W.3d at 887) (emphasis added).
            Our research has revealed only one opinion that might be read to support White's position
on this issue. In Ex parte Green, 159 S.W.3d 925 (Tex. Crim. App. 2004), Judge Johnson, joined
by Judge Price, filed a statement dissenting from the Texas Court of Criminal Appeals' decision to
dismiss an application for writ of habeas corpus. Judge Johnson wrote:
[T]he prohibition [embodied by Rule of Evidence 606(b)] sometimes results in
improper conduct in the jury room that impermissibly affects the verdict. Here, it
was improper speculation about parole. In another case, it may be a juror using
personal experience, unrelated to the case at bar, to influence the vote of other
jurors, such as a juror who has been burglarized talking about the sense of violation
that such victims feel and urging conviction or severe punishment based not on the
burglary, but on the juror's own emotional distress in response to a different
burglary. We should not invade the jury room for little purpose, but due process
demands that there be a way to address blatant misconduct. Rule 606(b) bars any
examination of the process. A trial cannot be fair if jury deliberations are tainted. 

                        . . . .
 
The inability to challenge jury misconduct is a violation of applicant's right to due
process and a fair trial. I respectfully dissent.

Id. at 926 (emphasis added). However, Judge Johnson's and Price's view has not yet been adopted
by a majority of the Texas Court of Criminal Appeals, and the weight of the authority from the
United States Supreme Court and the Texas Supreme Court, as well as the opinions of this and other
Texas courts of appeals, counsels against adopting their view at this time.
            Therefore, absent guidance to the contrary from the Texas Court of Criminal Appeals,
binding precedent forecloses this issue against White. Cf. Davis v. State, 119 S.W.3d 359, 365–66
(Tex. App.—Waco 2003, pet. ref'd) (testimony of jury's consideration of parole application not
permitted under Rule 606(b) at motion for new trial hearing; Rule 606(b) constitutional on its face
and as applied); Musgrove v. State, 82 S.W.3d 34, 38–39 (Tex. App.—San Antonio 2002, pet. ref'd)
(application of Rule 606(b) did not violate appellant's due process rights); Hicks v. State, 15 S.W.3d
626, 629–30 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (holding Rule 606(b) is
constitutional under both state and federal constitutions guaranteeing fair and impartial jury, and
citing Hines v. State, 3 S.W.3d 618 (Tex. App.—Texarkana 1999, pet. ref'd), for support); Sanders,
1 S.W.3d at 888 (district court correctly excluded juror's post-verdict affidavit pursuant to Rule
606(b)). We overrule this point of error.
V.        Did White Receive Ineffective Assistance of Counsel at Trial?
            Finally, in a footnote of her brief, White contends, in conjunction with her second, third, and
fourth points of error, that she received ineffective assistance of counsel. At oral argument, White's
counsel conceded the appellate record is insufficient to support a claim of ineffective assistance at
this time. Accordingly, we overrule White's claim of ineffective assistance. Cf. Thompson v. State,
9 S.W.3d 808, 813–14 (Tex. Crim. App. 1999) (record on direct appeal "simply undeveloped" and
did not sufficiently reflect failings of trial counsel to support claim of ineffective assistance on direct
appeal).
VI.      Conclusion
            For the reasons stated, we affirm the trial court's judgment.



                                                                        Jack Carter
                                                                        Justice


Date Submitted:          December 1, 2005
Date Decided:             December 14, 2005

Publish