Natalie Michelle WHITE, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–05–00049–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 1, 2005.

Decided Dec. 14, 2005.

Discretionary Review Granted
March 22, 2006.

Elizabeth DeRieux, Brown McCarroll L.L.P., Eric Albritton, Eric Albritton, P.C., Longview, for appellant.

William Jennings, Dist. Atty., Ray Bowman, Asst. Dist. Atty., Longview, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice CARTER.

On Wednesday, August 18, 2004, sixteen-year-old Natalie Michelle White drove

her car into oncoming traffic on Loop 281 in Longview, Texas, and crashed into the vehicle in which eighteen-year-old Lauren Frazier was riding. White was taken to a hospital as a result of injuries she sustained; Frazier, who had planned to leave for her first year at Baylor University the following morning, died an hour after the crash. Police had White's blood drawn at the hospital for purposes of alcohol testing. *See* TEX. TRANSP. CODE ANN. § 724.012 (Vernon Supp.2005). Test results later revealed White's blood alcohol contained .19 grams of alcohol per 100 milliliters of blood, an amount greater than twice the legal limit for persons over the age of twenty-one. *See* TEX. PEN.CODE ANN. § 49.01(2)(B) (Vernon 2003).

The State charged White with intoxication manslaughter and sought to have her case transferred from juvenile court to district court. *See* TEX. FAM.CODE ANN. § 54.02 (Vernon 2002). White did not oppose the transfer.[1] White pled guilty to the charge December 8, 2004, and a petit jury was empaneled to determine White's punishment. After hearing evidence and argument December 15, 2004, the jury assessed White's sentence at nine years' imprisonment, but did not grant community supervision. The trial court formally sentenced White in accordance with the jury's verdict January 3, 2005.

White filed a motion for new trial, and the trial court conducted a hearing on the motion. The trial court overruled White's motion for new trial March 10, 2005. White now appeals, raising five issues. For the reasons stated below, we affirm the trial court's judgment.

## I. Did the Trial Court Abuse Its Discretion By Denying White's Motion for New Trial?

In one point of error, White presents the following, which we set forth exactly as written in White's brief on appeal:

The Trial Court erred in denying Ms. White's Motion for New Trial because four of the twelve jurors should never have been seated: two jurors were absolutely disqualified under Tex.Code Crim. P. 35.19, while two other jurors failed to respond to voir dire questions, misrepresenting their background and biases. Each of these four errors was sufficient to require a new trial. The cumulative effect of the four errors also required a new trial.

We interpret the central focus of this issue as a challenge to the trial court's ruling on White's motion for new trial.

The standard that we must use to review a ruling on a motion for new trial is well settled: abuse of discretion. *See Lewis v. State,* 126 S.W.3d 572, 579 (Tex. App.-Texarkana 2004, pet. ref'd). "We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable." *Acosta v. State,* 160 S.W.3d 204, 210 (Tex.App.-Fort Worth 2005, no pet.) (citing *Charles v. State,* 146 S.W.3d 204, 208 (Tex.Crim.App.2004)). Therefore, while we ultimately may not have made the same decision as the trial court had we presided at the trial proceedings, we must nonetheless view the evidence presented at the hearing on the motion for new trial in the light most favorable to the trial court's ruling, and we

---

1. White waived her right to an indictment, and the State filed an information and complaint in the 188th Judicial District Court. The County Courts at Law of Gregg County have the same criminal jurisdiction as district courts, except for death penalty cases. *See* TEX. GOV'T CODE ANN. § 25.0942(a) (Vernon 2004). Because the juvenile certification proceedings had been conducted in County Court at Law Number 1, White agreed to have the adult proceedings transferred to that court from the district court.

will hold a trial court has abused its discretion in ruling on a motion for new trial *only when no reasonable view of the record* could support the lower court's ruling. *Acosta,* 160 S.W.3d at 210.

White raises two subissues in support of her contention that the trial court erred by denying her motion for new trial: (A) jurors Vernessia Giddings and Lamar Fredell Jones were "absolutely" disqualified from jury service by Article 35.19 of the Texas Code of Criminal Procedure; and (B) jurors Roosevelt Evers and Mona Williams failed to respond to voir dire questions about their backgrounds and biases, and, therefore, engaged in juror misconduct that necessitates granting a new trial.

**A. Giddings and Jones Were Absolutely Disqualified, But White Has Not Shown Harm.**

■ The record before us shows both Giddings and Jones had misdemeanor theft by worthless check charges pending at the time they sat on White's jury. Either the defense or the State may challenge a prospective juror for cause if that member of the venire panel is "under indictment or other legal accusation for misdemeanor theft or a felony[.]" TEX.CODE CRIM. PROC. ANN. art. 35.16(a)(3) (Vernon Supp.2005). A panel member who appears to be under such legal accusation should not be empaneled absent consent from both parties. TEX.CODE CRIM. PROC. ANN. art. 35.19 (Vernon 1989). Because our law *requires* the trial court to exclude panel members who have theft charges pending against them at the time they are called to jury service, White asserts the trial court erred by denying her motion for new trial.

"A conviction in a criminal case may be reversed on appeal on the ground that a juror in the case was absolutely disqualified from service under Article 35.19 ... only if: (1) the defendant raises the dis-

qualification before the verdict is entered; or (2) the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered and the defendant makes a *showing of significant harm* by the service of the disqualified juror." TEX.CODE CRIM. PROC. ANN. art. 44.46 (Vernon Supp.2005). In this case, White did not raise this issue at the trial court level until after the jury had returned its verdict. Therefore, White was required to show at the hearing on her motion for new trial that she suffered "significant harm" as a result of the service of the suspect jurors.

The trial court's denial of White's motion for new trial indicates the court below concluded White had not met her burden of showing "significant harm" directly attributable to the service of the suspect jurors. Accordingly, if any reasonable view of the evidence supports the trial court's conclusion that White did not meet this burden, the standard of appellate review requires us to affirm the trial court's ruling. *Accord Ford v. State,* 129 S.W.3d 541, 548–49 (Tex.App.-Dallas 2003, pet. ref'd) (concluding trial court's decision was not "arbitrary" or "unreasonable" in concluding juror did *not lie during voir dire;* denial of motion for new trial affirmed).

■ A defendant's conviction and sentence does not alone constitute a showing of "significant harm" required by Article 44.46 of the Texas Code of Criminal Procedure. *State v. Read,* 965 S.W.2d 74, 77 (Tex.App.-Austin 1998, no pet.); *Hernandez v. State,* 952 S.W.2d 59, 71 (Tex.App.-Austin 1997), *rev'd on other grounds,* 957 S.W.2d 851 (Tex.Crim.App.1998). Instead, the record from the post-trial hearing must demonstrate the defendant's alleged substantial harm is directly attributable to the service of the objectionable jurors. *See, e.g., Perez v. State,* 11 S.W.3d 218, 221

(Tex.Crim.App.2000); *Perez v. State,* 41 S.W.3d 712, 716 (Tex.App.-Corpus Christi 2001, no pet.) (opinion on remand); *Ristoff v. State,* 985 S.W.2d 623, 623–24 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

The facts in the case now before us most closely parallel those presented to the First Court of Appeals in *Ristoff.* There the appellant was convicted under the Texas Clean Air Act of three misdemeanor offenses of outdoor burning. Ristoff asserted he was entitled to a new trial because one of the jurors in his case was under indictment for welfare fraud. *Ristoff,* 985 S.W.2d at 623. The State did not dispute the status of the objected-to juror's indictment, and the record was also clear that the juror was unaware of the indictment at the time of Ristoff's trial. *Id.* at 623–24. On appeal, the First Court of Appeals noted "at the hearing on appellant's motions [for new trial], appellant made no attempt to show significant harm, nor is any apparent." *Id.* at 624. The appellate court then held Ristoff had failed to meet his burden of proof on appeal, and the court overruled his point of error. *Id.*

In the case now on appeal, White has not cited this Court to any evidence in the record that demonstrates she suffered harm as a direct result of Giddings and Jones' jury service. However, after reviewing the entire record of the hearing on the motion for new trial, we find there is no evidence that Giddings' and Jones' jury service directly caused White "significant harm." Moreover, the trial court heard testimony that both Giddings and Jones were unaware of the pending criminal charges. Viewing this evidence in the light most favorable to the trial court's ruling, as we must, this evidence would support the court's conclusion that White did not suffer any direct harm, let alone "substantial harm," that could be attributable to the fact Giddings and Jones had charges pending against them at the time of their jury service. Accordingly, we cannot say the trial court acted arbitrarily or unreasonably by overruling White's motion for new trial on the basis of Giddings' and Jones' jury service.

**B. Jurors Williams and Evers Did Not Engage in Misconduct Requiring a New Trial.**

White next asserts the trial court erred in overruling her motion for new trial because the record purportedly shows jurors Williams and Evers did not truthfully answer questions during voir dire. This lack of candor, according to White, resulted in juror misconduct that should entitle her to a new trial. Because the alleged misconduct occurred during voir dire, the trial court was required to determine (1) whether the juror or jurors withheld information, (2) whether the withheld information was material,[2] and (3) whether White used due diligence in eliciting the withheld information omitted by the juror or jurors during voir dire. *See Franklin v. State,* 138 S.W.3d 351, 355–56 (Tex.Crim.App. 2004). On appeal, we review the trial court's ruling for abuse of discretion. *See Ford,* 129 S.W.3d at 547–49 (applying abuse of discretion during appellate review of denial of new trial based on allegedly withheld voir dire information).

*1. Williams*

White first argues juror Mona Williams failed to inform the litigants during voir dire that she had been the victim of a drunk driver. White's brief on appeal focuses on Williams' alleged failure to re-

---

**2.** "Material" information is that which tends to show a juror's bias or prejudice. *Ford,* 129 S.W.3d at 547 (citing *Decker v. State,* 717 S.W.2d 903, 907 (Tex.Crim.App.1983) (op. on reh'g)).

spond to a question posed by the trial court during its voir dire of the panel:

> [Trial Court]: Is there anyone on the panel—and again, I just want a show of hands—who has experienced a situation where either a *close friend* or a *family member* was *seriously injured* or a *death was caused* due to an intoxicated driver?

(Emphasis added.) The record before us does not show Williams responded affirmatively to the trial court's question. Nor does the record reveal that Williams, at any other time during voir dire, informed the parties or the court that she had been the victim of a drunk driver. However, at the hearing on White's motion for new trial, both Giddings and John Moyers (another juror) testified, without objection, they had heard juror Williams tell others, before deliberating, that she had been the victim of a drunk driver.

At oral argument, White asserted that the trial court's use of the phrase "family member" necessarily includes the individual to whom that question is being asked, and because Williams did not respond regarding her personal victimization, she withheld material information during voir dire. We cannot say that it would be unreasonable for a jurist to disagree; that is to say, it is not arbitrary or unreasonable for a reasonable jurist to interpret the

trial court's question as one that seeks information about persons (friends or family) to the exclusion of the person to whom the question is being asked. Therefore, we cannot say that no reasonable view of the record supports the trial court's decision.

Further, the Texas Court of Criminal Appeals has "long insisted" trial counsel "ask *specific* questions, not rely on broad ones," to satisfy the duty to use due diligence in uncovering bias during voir dire. *Gonzales v. State*, 3 S.W.3d 915, 917 (Tex. Crim.App.1999) (citing *Brandon v. State*, 599 S.W.2d 567, 578 (Tex.Crim.App.1979)); *see also Brasher v. State*, 139 S.W.3d 369, 373–74 (Tex.App.-San Antonio 2004, pet. ref'd). In the case now before us, the trial court did not specifically ask whether any members of the panel had *themselves* been a victim of a drunk driver. Nor did the State or the defense ask such a specific question. Had such a direct, specific question been asked, and had Williams then failed to answer, then the record would reflect juror misconduct. *Accord Jones v. State*, 596 S.W.2d 134 (Tex.Crim.App. [Panel Op.] 1980).[3] In this case, however, the record does not so reflect misconduct.

At best, White's point of error on appeal is an attempt to rely on a broad-form question that, when reasonably examined on appeal, did not directly seek to elicit the

---

**3.** In *Jones,* a person served on a criminal jury after not disclosing her prior occupation as a Bexar County jailer. *Jones,* 596 S.W.2d at 136. During voir dire, defense counsel had asked the panelists if anyone had "close friends" who were engaged in law enforcement. *Id.* After noting the members of the venire had never been directly asked about the prior work history of each, the Texas Court of Criminal Appeals noted:

> The voir dire examination is not an exercise to test the ability of defense counsel to joust with a prospective juror in an attempt to see what quantum of information he may or may not be withholding. The voir dire

process is designed to insure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it. However, defense counsel has an obligation to ask questions calculated to bring out that information which might be said to indicate a juror's inability to be impartial, truthful, and the like. Unless defense counsel asks such questions, we must hold, as we do here, that the purportedly material information which a juror fails to disclose is not really "withheld" so as to constitute misconduct which would warrant a reversal. *Id.* at 137 (citations omitted).

allegedly withheld information. *Cf. id.* Accordingly, because the record does not demonstrate that Williams withheld information or that White exercised the requisite due diligence by asking any specific, direct question that would have elicited the now-complained-of information, and because White is not entitled to rely on broad-form questions to meet the due diligence requirement, we cannot say the trial court abused its discretion by overruling White's motion for new trial on the basis of Williams' jury service.

### 2. Evers

■ White next asserts Evers engaged in misconduct by failing to disclose his prior misdemeanor convictions for assault and terroristic threat. During its voir dire, the State asked:

> There are those of you who have had an interest in the outcome of a criminal case. Les Ferguson, I know your brother was involved in a matter, and I know you cared about what happened in that case and your brother did, too. So I'll point that out that *you may have family, you may have friends that were victims in a case.* You may also have a situation where *you had someone close to you* that was a defendant in a case. If there's any situation like that and we haven't asked it, would you raise your hand now and we'll deal with that individually?

(Emphasis added.) The record shows only one panel member raised his hand, and that person was not Evers. At the hearing on White's motion for new trial, certified documents were admitted into evidence showing Evers had been convicted of two different misdemeanors, assault and terroristic threat. White now argues, "Mr. Evers' choice to withhold that information from the court and the parties, in violation of his oath, requires a new trial in this case."

At oral argument, White suggested that a reasonable interpretation of the State's question would include the prospective jurors themselves within the breadth of the phrases "family" or "friends" and, thus, Evers had an obligation to inform the parties about his criminal convictions. However, a different—equally logical interpretation—of the State's question is that it concerned only whether family members or friends (not the panelists themselves) had an interest in the outcome of a criminal case. The question regarding a "defendant in a case" clearly referred to third persons ("someone close to you"). Thus, to the extent that the trial court could have reasonably concluded the State's question was not designed to elicit the specific information allegedly withheld by Evers, we cannot say the trial court's ruling was arbitrary or unreasonable.

Additionally, neither the parties nor the trial court asked the veniremembers whether they had ever been charged or convicted of any crime above a class C misdemeanor. White did ask the panel members if they knew anyone who had been on community supervision, and apparently, a large number of people raised their hands. However, the record before us does not show White followed up that question with further individual questioning of each member of the panel who had raised his or her hand regarding the substance of each person's affirmative response to having known someone who had been on community supervision. Thus, we cannot tell from this record that Evers ever affirmatively withheld any such information. The record before us does not indicate which veniremembers raised their hands, nor does the record demonstrate White probed further into these responses by asking more specific questions of each panelist. *See Gonzales,* 3 S.W.3d at 917

("counsel must ask follow-up questions after uncovering potential bias").

Accordingly, as the record does not demonstrate that Evers withheld information or that White exercised due diligence in attempting to elicit the complained-of information from Evers, and as White is not entitled to rely on broad-form questions in lieu of specific questions to demonstrate she exercised due diligence, we must conclude the trial court did not err in overruling the motion for new trial. This point of error is overruled.

## II. Must a Trial Court Have a PSI Prepared for the Jury's Consideration?

█ White contends the trial court erred by not ordering the preparation of a presentence investigation (PSI) report until *after* the jury had assessed White's sentence. Article 42.12, Section 9(a) of the Texas Code of Criminal Procedure requires a judge in a felony case to order that a PSI report be prepared "before the imposition of sentence." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(a) (Vernon Supp. 2005). White filed a motion for a PSI report December 8, 2004. In ordering a PSI report, the record before us clearly shows the trial court waited to act on White's motion until *after* the jury returned its punishment verdict. On appeal, White cites *Whitelaw v. State*, 29 S.W.3d 129, 132 (Tex.Crim.App.2000), and contends the trial court is always required to order a PSI report when requested by a defendant, even if the defendant is not eligible for community supervision.[4] White then argues that, because only the jury had the authority to grant community supervision in this case (based on her submission to the jury of the issue of punishment), the PSI report should have been prepared before trial and made available to the jury. White contends the PSI re-

port would have provided the jury with additional, necessary information regarding the suitability of community supervision as an appropriate punishment because PSI reports generally include suggestions about the restrictions that could be imposed by the trial court, information about rehabilitation programs that would have been available to White through community supervision, as well as facts about other facets of community supervision.

Article 42.12, Section 9(g) of the Texas Code of Criminal Procedure provides, "A judge is not required to direct an officer to prepare a presentence report in a felony case under this section if: (1) punishment is to be assessed by a jury...." TEX.CODE CRIM. PROC. ANN. art. 42.12, § 9(g). While Section 9(g) does not expressly forbid the preparation of a PSI report, nor the publishing of a PSI report to a jury, the Legislature has not expressed a clear intent to require a PSI report for a jury's use in assessing punishment. Nor will we overreach our authority by imposing such a requirement. This point of error is overruled.

## III. Did the Trial Court Violate White's Sixth Amendment Right to Counsel By Allowing a Part of the Trial To Be Conducted Without Her Presence?

█ White also contends the trial court erroneously permitted part of the trial to be conducted without White's presence. The record shows David Brabham, judge of the 188th Judicial District Court of Gregg County, was in charge of initially greeting all the jurors who had received a jury summons for the week of December 13, 2004. It was then Judge Brabham's job to divide that general assembly into smaller panels, which would then be sent

---

4. The record in this case is clear: White *was* eligible for community supervision.

to the various trial courts for jury selection in the individual cases. Before dividing the prospective jurors into panels, it was also Judge Brabham's job to qualify each prospective juror within this assembly. Only after completing that task did Judge Brabham send the smaller panels to the various trial courts.

During the initial qualification proceedings, Judge Brabham apparently had several individual conversations with various prospective jurors. One of those with whom he talked was Giddings. According to Giddings' testimony at the hearing on White's motion for new trial, Giddings told Judge Brabham that she had been previously charged with theft by worthless check, but that she also told the judge that she believed those charges had been dismissed. This conversation between Judge Brabham and Giddings was not recorded, preserved, or transcribed for this appeal.

Texas law provides:

> In all prosecutions for felonies, the defendant must be personally present at the trial, and he must likewise be present in all cases of misdemeanor when the punishment or any part thereof is imprisonment in jail; provided, however, that in all cases, when the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.

TEX.CODE CRIM. PROC. ANN. art. 33.03 (Vernon 1989). Nonetheless, the Texas Court of Criminal Appeals has repeatedly held that "[t]he general assembly portion of jury selection is not considered part of 'the trial' and therefore the accused is not entitled to be present." *Jasper v. State*, 61 S.W.3d 413, 423 (Tex.Crim.App.2001) (citing *Moore v. State*, 999 S.W.2d 385, 399 (Tex.Crim.App.1999); *Chambers v. State*, 903 S.W.2d 21, 31 (Tex.Crim.App.1995)).

The "general assembly" portion of the proceedings is not considered part of an accused's trial "because 'prospective jurors who are summoned to a general assembly have not been assigned to any particular case [and] [t]he judge presiding over the general assembly is assigned for that purpose only at that time and has no given case in mind.'" *Jasper*, 61 S.W.3d at 423 (quoting *Chambers*, 903 S.W.2d at 31).

In the case now before us, White's complaint concerns a conversation that took place during the general assembly of all prospective jurors. Because neither our constitution nor our statutes mandate White's presence at these proceedings, no error has been shown. *Cf. Moore*, 999 S.W.2d at 399. We overrule this point of error.

## IV. Is Rule 606(b) of the Texas Rules of Evidence Unconstitutional As Applied to White?

White further contends Rule 606(b) of the Texas Rules of Evidence is unconstitutional as applied in her case because Rule 606(b) prevented her from presenting evidence that might otherwise show she suffered "significant harm to the jury service of Williams, Jones, Evers, and Giddings." The rule at issue states:

> Upon an inquiry into the validity of a verdict or indictment, a juror *may not testify* as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. *Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence for any of these purposes.* However, a juror may testify: (1) whether any outside influence was im-

properly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

TEX.R. EVID. 606(b) (emphasis added). The United States Supreme Court (interpreting Federal Rule 606(b)), the Texas Supreme Court, and this Court have each previously addressed the constitutionality of Rule 606(b). Each time, Rule 606(b) has been held constitutional.

**A. The Federal Counterpart to TEX.R. EVID. 606(b) Has Not Been Held Unconstitutional.**

In *Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), the United States Supreme Court reviewed whether a trial court had erred by excluding evidence of alleged juror misconduct pursuant to FED.R.EVID. 606(b). Tanner and his codefendants were convicted of mail fraud and conspiring to defraud the United States. *Id.* at 109–10, 107 S.Ct. 2739. Tanner introduced evidence from jurors at the hearing on his motion for new trial that some jurors had consumed alcohol, used marihuana, and consumed cocaine during the course of the trial. *Id.* at 113–16, 107 S.Ct. 2739. The trial court held the jurors' affidavits regarding the drug and alcohol use were inadmissible. *Id.* at 115, 107 S.Ct. 2739. After reviewing the legislative and cultural histories of Rule 606(b), as well as the public policy arguments in favor of Rule 606(b)'s exclusion of juror testimony regarding deliberations, Justice O'Connor, writing for the majority, disagreed with Tanner's contention that the Constitution should compel the trial court to allow Tanner to present juror testimony about alleged drug and alcohol abuse by jurors. *Id.* at 116–17, 127, 107 S.Ct. 2739. In reaching this conclusion, Justice O'Connor noted that the parties may still "seek to impeach the verdict by nonjuror evidence of misconduct." *Id.* (referencing *United States v. Taliaferro,* 558 F.2d 724, 725–26 (4th Cir.1977) (trial court considered records of club where jurors dined and testimony of bailiff who accompanied jurors)).[5]

**B. The Texas Supreme Court Has Held TEX.R. EVID. 606(b) To Be Constitutional.**

In *Golden Eagle Archery, Inc. v. Jackson,* 24 S.W.3d 362, 364 (Tex.2000), the issue presented was "whether procedural and evidentiary rules may constitutionally prohibit jurors from testifying post-verdict about statements made during deliberations, unless such statements concern outside influences." Jackson had sued Golden Eagle Archery and several other defendants for injuries he sustained while drawing back the string of a compound bow. *Id.* The jury found Jackson forty-five percent at fault for the injuries, and the trial court awarded Jackson approximately $26,700.00 in damages based on the jury's verdict. *Id.* Jackson filed a motion for new trial alleging juror misconduct and submitted affidavits from several jurors, the substance of which concerned statements made by several of the jurors during deliberations. *Id.* at 364–65. The trial court held the affidavits were incompetent under the civil rules of evidence and overruled Jackson's motion for new trial. *Id.*

---

5. *And cf. Maldonado v. Mo. Pac. Ry. Co.,* 798 F.2d 764, 770 (5th Cir.1986) (Rule 606(b) encourages free discussion in jury room); *Salazar v. Dretke,* 419 F.3d 384, 399 (5th Cir. 2005) (construing Texas Rule 606(b) in conjunction with federal law and precedent, no Supreme Court precedent obligates state courts to admit testimony from jurors concerning their internal deliberations). It should be noted that Tanner had couched his due process claim in terms of a violation of the Sixth Amendment's right to counsel. Justice O'Connor's opinion, however, appeared to employ a much greater breadth of analysis than merely focusing on Tanner's claim of a Sixth Amendment right to counsel violation.

at 366. On petition for review, the Texas Supreme Court examined the various public policies in support of Rule 606(b), as well as the rule's foundation in Lord Mansfield's prohibition against post-verdict attacks via juror testimony. *Id.* at 367. The *Golden Eagle* court ultimately concluded, "[W]hile failure to disclose bias is a form of juror misconduct that justifies a new trial under the appropriate circumstances, proof of a juror's failure to disclose bias must come from some source other than a fellow juror's testimony about deliberations." *Id.* at 371. The Texas Supreme Court thus held:

> Rules 327(b) and 606(b) do not deprive the litigants of a fair trial under the Texas Constitution, nor do they fail to afford litigants due process. The rules are designed to balance concerns about the threat of jury misconduct with the threat from post-verdict juror investigation and impeachment of verdicts.

*Id.* at 375.

## C. This Court and Other Texas Courts of Appeals Have Held Rule 606(b) To Be Constitutional.

This Court has previously held the current Rule 606(b) is not unconstitutional. In *Hines v. State*, 3 S.W.3d 618, 620 (Tex. App.-Texarkana 1999, no pet.), the appellant filed a motion for new trial alleging juror misconduct. Hines attached to his motion an affidavit from one of the jurors; the affidavit stated at least two members of the jury had discussed the impact of parole law on any punishment Hines might receive. *Id.* This Court then reviewed the history of Rule 606(b), the competing public policy issues supporting such a rule, and the effects Rule 606(b) would have on the rights of an appellant attempting to show harm arising from jury misconduct. *Id.* at 622–23. Ultimately, this Court determined Tex.R. Evid. 606(b) properly balanced the public's need to protect the

sanctity of jury deliberations against the needs of an appellant trying to pry into the minds of jurors during post-verdict proceedings. This Court then overruled Hines' constitutional challenge.

Similarly, other courts of appeals have upheld Rule 606(b). *See, e.g., Easly v. State*, 163 S.W.3d 839, 842 (Tex.App.-Dallas 2005, no pet.) (Rule 606(b) prohibits trial court from considering juror affidavits at hearing on motion for new trial; such affidavits are incompetent evidence to support granting of motion for new trial); *State v. Ordonez*, 156 S.W.3d 850, 852 (Tex.App.-El Paso 2005, no pet.) (trial court erred by granting motion for new trial based solely on juror affidavits concerning deliberations; such evidence was incompetent; award of new trial reversed); *State v. Lewis*, 151 S.W.3d 213, 219–20 (Tex.App.-Tyler 2004, pet. ref'd) (trial court erred in granting new trial where sole basis was juror affidavit regarding consideration of how parole would apply to defendant's sentence; affidavit not competent evidence under Rule 606(b)); *Sanders v. State*, 1 S.W.3d 885, 887 (Tex.App.-Austin 1999, no pet.) ("606(b) unquestionably makes proving jury misconduct in criminal trials more difficult than it was under prior rules. But the rule does not preclude proof of jury misconduct by other means, such as through the testimony of a nonjuror with personal knowledge of the misconduct.").

## D. Rule 606(b) Is Not Unconstitutional As Applied to White in this Case.

During the hearing on White's motion for new trial, White attempted to ask Jones, "Did you also begin to discuss what you believed to be the appropriate punishment in this case [during the jury's deliberations]?" (Apparently White was trying to show that juror Williams had been previously involved in an accident with a drunk driver, that the person had not been

punished, and that Williams had failed to disclose this alleged bias during voir dire.) The State objected to White's question, stating the question was prohibited by TEX.R. EVID. 606(b). The trial court sustained the State's objection. White asserted that, under *Nelson v. State*, which requires her to show she suffered significant harm as a result of an absolutely disqualified juror's service, she must be allowed to inquire into the jury's deliberations to show such harm; White's counsel further stated, "If the Court does not allow us to do this, we are being denied due process under the Federal Constitution, as well as due course of law under both the Code of Criminal Procedure and the Texas Constitution. . . ." The trial court continued to sustain the objection. The trial court further denied White the opportunity to have the witness testify to the same evidence as part of a bill of exceptions to the trial court's ruling. The trial court held that allowing the bill of exceptions would be tantamount to permitting the witness to testify, and such was expressly prohibited under the Rules of Evidence.

The record before us suggests White had planned to call juror Williams to testify about her deliberations with the other jurors. Pursuant to Rule 606(b), the State objected to any such testimony, an objection the trial court sustained (but only to the extent Williams might testify about jury deliberations, and not as to matters outside evidence otherwise prohibited by Rule 606). White again challenged the constitutionality of Rule 606(b) as applied in her case and asked to be allowed to present evidence in a bill of exceptions, a request the trial court denied. A similar attempt to discuss jury deliberations occurred during the testimony of Giddings and John Moyers. The State objected, citing Rule 606(b); the court sustained the State's objections; and the court further prohibited White from soliciting testimony from the prospective witnesses about jury deliberations.

Rule 606(b) of the Texas Rules of Evidence was changed to its present text and became effective March 1, 1998. *Sanders,* 1 S.W.3d at 887. In commenting on the new rule, Cathleen C. Herasimchuk (now Judge Cochran) wrote:

> The 1998 version of Rule 606(b) apparently wipes out *Buentello,* and all of its progeny. *Henceforth, the same rule that has applied to offering the testimony or affidavits of jurors in Texas civil cases will apply to criminal cases. . . .* This is a dramatic change in criminal proceedings. . . . The new rule is a vast improvement over the former Criminal Rule 606(b) which threw open the door of the jury room too widely, but it remains to be seen whether the revised Rule 606(b) has closed shut the jury deliberation room too firmly in criminal cases.

Cathleen C. Herasimchuk, *Texas Rules of Evidence Handbook,* Rule 606(b), at 558–59 (3d ed. 1998) (as quoted in *Sanders,* 1 S.W.3d at 887) (emphasis added).

Our research has revealed only one opinion that might be read to support White's position on this issue. In *Ex parte Green,* 159 S.W.3d 925 (Tex.Crim.App. 2004), Judge Johnson, joined by Judge Price, filed a statement dissenting from the Texas Court of Criminal Appeals' decision to dismiss an application for writ of habeas corpus. Judge Johnson wrote:

> [T]he prohibition [embodied by Rule of Evidence 606(b) ] sometimes results in improper conduct in the jury room that impermissibly affects the verdict. Here, it was improper speculation about parole. *In another case, it may be a juror using personal experience, unrelated to the case at bar, to influence the vote of other jurors, such as a juror who has*

*been burglarized talking about the sense of violation that such victims feel and urging conviction or severe punishment based not on the burglary, but on the juror's own emotional distress in response to a different burglary.* We should not invade the jury room for little purpose, but due process demands that there be a way to address blatant misconduct. Rule 606(b) bars any examination of the process. A trial cannot be fair if jury deliberations are tainted.

. . . .

*The inability to challenge jury misconduct is a violation of applicant's right to due process and a fair trial.* I respectfully dissent.

*Id.* at 926 (emphasis added). However, Judge Johnson's and Price's view has not yet been adopted by a majority of the Texas Court of Criminal Appeals, and the weight of the authority from the United States Supreme Court and the Texas Supreme Court, as well as the opinions of this and other Texas courts of appeals, counsels against adopting their view at this time.

Therefore, absent guidance to the contrary from the Texas Court of Criminal Appeals, binding precedent forecloses this issue against White. *Cf. Davis v. State,* 119 S.W.3d 359, 365–66 (Tex.App.-Waco 2003, pet. ref'd) (testimony of jury's consideration of parole application not permitted under Rule 606(b) at motion for new trial hearing; Rule 606(b) constitutional on its face and as applied); *Musgrove v. State,* 82 S.W.3d 34, 38–39 (Tex.App.-San Antonio 2002, pet. ref'd) (application of Rule 606(b) did not violate appellant's due process rights); *Hicks v. State,* 15 S.W.3d 626, 629–30 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd) (holding Rule 606(b) is constitutional under both state and federal constitutions guaranteeing fair and impartial jury, and citing *Hines v. State,* 3

S.W.3d 618 (Tex.App.-Texarkana 1999, pet. ref'd), for support); *Sanders,* 1 S.W.3d at 888 (district court correctly excluded juror's post-verdict affidavit pursuant to Rule 606(b)). We overrule this point of error.

## V. Did White Receive Ineffective Assistance of Counsel at Trial?

Finally, in a footnote of her brief, White contends, in conjunction with her second, third, and fourth points of error, that she received ineffective assistance of counsel. At oral argument, White's counsel conceded the appellate record is insufficient to support a claim of ineffective assistance at this time. Accordingly, we overrule White's claim of ineffective assistance. *Cf. Thompson v. State,* 9 S.W.3d 808, 813–14 (Tex.Crim.App.1999) (record on direct appeal "simply undeveloped" and did not sufficiently reflect failings of trial counsel to support claim of ineffective assistance on direct appeal).

## VI. Conclusion

For the reasons stated, we affirm the trial court's judgment.