NO.
12-05-00171-CR

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS DISTRICT

 

TYLER, TEXAS

 

 

DESIREE DAWN LINGO-PERKINS,       §                      APPEAL
FROM THE SECOND

APPELLANT

 

V.        §                      JUDICIAL DISTRICT COURT OF

 

THE
STATE OF TEXAS,

APPELLEE   §                      CHEROKEE
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



MEMORANDUM OPINION

            Desiree
Lingo-Perkins appeals her conviction for capital murder.  In two issues, she complains that the trial
court erred when it denied her motion for a new trial without a hearing and
that the trial court erred when it allowed an audio tape into evidence.  We affirm.

 

Background

            On March 10, 2000, Kevin McElroy
received a telephone call at the business he owned.  The caller, a woman, told McElroy that she
and others had kidnapped his teenage son, Kyle McElroy.  McElroy then heard his son’s voice on the
telephone telling him to do what the woman said because the kidnappers were
going to kill him.[1]  The woman
directed McElroy to a location where he would find his son’s pickup truck and a
ransom note.  McElroy went to the City of
Troup police department and talked to the chief.  Then, with an officer observing
surreptitiously, McElroy went to Highway 110 where he found his son’s
truck.  He broke the window to get in and
found the note.  The typewritten note
told McElroy that his son was alive, demanded $200,000 for his safe release,
and instructed McElroy to wait for a phone call at his office.








            In the meantime, the Troup police
chief called the Federal Bureau of Investigation (FBI).  The closest FBI office was in Tyler, Texas,
and the agents and special agents were at the firing range in north Tyler.  The entire office went to Troup, and they set
up a command post at a closed local business. 
McElroy met with the FBI agents. 
They gave him a device to record telephone calls and assigned agents to
protect him.  McElroy withdrew $100,000
in cash from a local bank and returned to his business to await another
telephone call.  At about 7:00 p.m.,
McElroy received another phone call from the same woman.  The woman was upset that he had only obtained
half the money and hung up.  She called
back less than an hour later and directed him to a phone booth in New
Summerfield, outside a restaurant, where he would find further instructions. 

            McElroy went to the phone booth and
found a second note.  As directed by the
note, he left the money in the back of a laundromat just down the road from the
telephone booth and then went back to his office to wait for another phone
call.  The FBI agents maintained
surveillance on the laundromat and arrested Daniel Rios, a machine operator at
McElroy’s business, after he picked up the money.  Working quickly, they identified and arrested
several other subjects.  The next day,
their investigation led them to a remote location and to Kyle McElroy’s
body.  He had been strangled and was
dead.  

            The FBI investigators identified
Appellant as the woman who had called McElroy, but were unable to locate
her.  Several years passed, and she was
finally located in Nuevo Laredo, Mexico. 
The FBI arranged for the Mexican police to arrest Appellant, and she was
repatriated to the United States in 2004. 
Upon being brought into custody in the United States, Appellant admitted
that she had been the caller, although she said that her cooperation had been
under duress.

            A Cherokee County grand jury
indicted Appellant for the felony offense of capital murder.  The State did not seek the death penalty, and
Appellant was convicted as charged in the indictment.  Pursuant to law, her punishment was assessed
at life in prison.  This appeal follows.

 

Motion for New
Trial

            In her first issue, Appellant
complains that the trial court erred when it denied her motion for a new trial
without a hearing.

Standard of
Review

            In her motion for a new trial,
Appellant alleged that the evidence was insufficient to support her conviction
and that a juror had committed misconduct. 
Appellant presently complains that the trial court should have held a
hearing on the second complaint. 
Appellant’s specific complaint of misconduct is contained in one
sentence attested to by her appellate attorney. 
The attorney swore under penalties of perjury as follows: “Defendant
alleges that jury misconduct occurred in that the jury foreperson has indicated
publicly that the jurors considered the lack of any rebuttal by the defense
against the State’s case.”

            We review the trial court’s decision[2]
not to conduct a hearing on a motion for new trial for an abuse of
discretion.  Reyes v. State,
849 S.W.2d 812, 815 (Tex. Crim. App. 1993). 
An abuse of discretion occurs if a trial court makes a ruling without
reference to any guiding rules or principles or, in other words, when the act
was arbitrary or unreasonable.  Montgomery
v. State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

Analysis

            As a prerequisite to obtaining a
hearing and as a matter of pleading, motions for new trial must be supported by
affidavit, either of the accused or someone else, specifically showing the
truth of the grounds of attack.  Martinez
v. State, 74 S.W.3d 19, 21-22 (Tex. Crim. App. 2002); McIntire v.
State, 698 S.W.2d 652, 658 (Tex. Crim. App. 1985).  The affidavit is not required to reflect
every component legally required to establish relief, but either the motion
itself or the affidavit must show that reasonable grounds exist to grant
relief.  Martinez, 74
S.W.3d at 21-22; Reyes, 849 S.W.2d at 816.

            Appellant’s motion for new trial was
filed in a timely fashion, properly presented to the trial court, and supported
by a sworn affidavit.  Because the trial
court did not conduct a hearing on the motion, we must determine whether the
affidavit and motion are sufficient to require the trial court to conduct a
hearing.








            This case is similar to Martin
v. State, 823 S.W.2d 391, 393 (Tex. App.–Texarkana 1992, pet. ref’d) in
which the Sixth Court of Appeals held that hearsay statements of counsel
complaining of juror misconduct were insufficient to require a hearing.  Id. (citing McIntire v.
State, 698 S.W.2d 652, 660 (Tex. Crim. App. 1985)).  The affidavit in this case is even less
compelling.  The affidavit held
insufficient in Martin contained the hearsay statement of counsel
reporting what a juror had told him.  The
affidavit in this case contains at least two levels of hearsay, and the
affidavit does not state who heard the juror’s statements or how counsel
learned of the statements.  See also Vyvial
v. State, 111 Tex. Crim. 111, 10 S.W.2d 83, 84 (1929) (When a motion
for new trial depends on extraneous matters which are necessarily hearsay, the
accused must have attached the affidavit of some person who has knowledge of
the facts.).








            Appellant’s counsel had no personal
knowledge of any misconduct and did not include an affidavit of either a juror
or a person who had personal knowledge of the juror’s statements.  Furthermore, the juror would have been unable
to testify to the contents of the jury deliberations.  See Tex.
R. Evid. 606(b); State v. Lewis, 151 S.W.3d 213, 219-20
(Tex. App.–Tyler 2004, pet. ref’d); but see White v. State, 181
S.W.3d 514 (Tex. App.–Texarkana 2005, pet. granted).  Therefore, the trial court was not required
to hold a hearing on Appellant’s motion. 
Consequently, the trial court did not abuse its discretion when it
overruled Appellant’s motion by operation of law.  Appellant’s first issue is overruled.

 

Admission of
Audio Tape of Ransom Demand

            In her
second issue, Appellant complains that the trial court erred when it permitted
into evidence the audio tape of Appellant demanding money from Kevin McElroy
for the safe return of his son. 
Specifically, Appellant complains that the voice was not sufficiently
authenticated as being hers and that the tape itself was not sufficiently authenticated
as being an accurate representation of the conversation that occurred.  

            The second
complaint is waived.  Although Kevin
McElroy did identify the tape as containing the conversation he had with the
caller, the only objection at trial was to an identification of Appellant as
the caller on the tape.  Because there
was not an objection to the general authenticity of the tape, that complaint is
waived.  See Tex. R. App. P. 33.1(a)(1)(A); Young
v. State, 183 S.W.3d 699, 704-05 (Tex. App.–Tyler 2005, pet. ref’d).

            With
respect to the complaint that Appellant’s voice was not identified, we review a
trial court’s admission or exclusion of evidence for an abuse of
discretion.  Rankin v. State,
974 S.W.2d 707, 718 (Tex. Crim. App. 1996); Montgomery, 810
S.W.2d at 391.  A trial court abuses its
discretion when it acts without reference to any guiding rules and principles
or acts arbitrarily or unreasonably.  Montgomery,
810 S.W.2d at 380.

            Rule of
Evidence 901 governs the authentication requirement for the admissibility of
recorded evidence.  See Tex. R. Evid. 901; Angleton v.
State, 971 S.W.2d 65, 69 (Tex. Crim. App. 1998).  The authentication requirement for
admissibility of evidence is satisfied by proof sufficient to support a finding
that the matter in question is what the proponent claims it is.  Tex.
R. Evid. 901(a).  Subsection (b)
provides a nonexclusive list of methods to authenticate evidence.  Tex.
R. Evid. 901(b).  One example
given is the testimony of a witness with knowledge that a matter is what it is
claimed to be.  Tex. R. Evid. 901(b)(1). 
Another is “identification of a voice, whether heard firsthand or
through mechanical or electronic transmission or recording, by opinion based
upon hearing the voice at anytime under circumstances connecting it with the
alleged speaker.”  Tex. R. Evid. 901(b)(5). 

            It was
reasonable for the trial court to conclude that it was Appellant’s voice on the
recording.  Two witnesses who knew
Appellant and her voice testified that they heard the tape and recognized her
voice.  One of these witnesses heard the
tape when it was played on television shortly after the kidnapping.  She reported to the FBI agents working on the
case that she knew the caller to be Appellant. 
Additionally, Appellant’s admission to an FBI agent that she was the
caller is at least circumstantial evidence that it was her voice on the
tape.  The trial court did not abuse its
discretion when it allowed the audio tape into evidence.  We overrule Appellant’s second issue.

 

Disposition

            We affirm the judgment
of the trial court.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

Opinion delivered June 7, 2006.

Panel
consisted of Worthen, C.J., Griffith, J., and DeVasto, J.

 

(DO
NOT PUBLISH)











[1] During the trial there
was evidence that suggested it was a recording of Kyle’s voice that was played
during the telephone call.





[2] The trial court
attempted to schedule a hearing, and the record contains correspondence from
the court’s coordinator to Appellant’s counsel and from counsel to the
coordinator to that end.  No hearing was
held, and the motion was overruled by operation of law.  See Tex.
R. App. P. 21.8(c).