# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00727-CR

---

**The State of Texas, Appellant**

**v.**

**Shane Salmon, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2019-800, THE HONORABLE R. BRUCE BOYER, JUDGE PRESIDING

---

### O P I N I O N

The State appeals from the trial court's order granting Salmon a new trial. Because the trial court predicated its ruling on a juror's testimony impeaching her own verdict—evidence deemed incompetent under Rule 606(b)—we reverse the trial court's order, reinstate the jury's unanimous guilty verdict, and remand for a jury trial on punishment.

### BACKGROUND

On a misty December night, around 11:00 p.m., Salmon drove north on the I-35 frontage road near New Braunfels; he and Betty Gibson were headed towards their home after a night out. At the same time, Adolfo Tomas Almaraz, a commercial truck driver, had finished a shift in the Rio Grande Valley and was returning his heavy haul, flatbed style truck to the company yard. The yard was right off the feeder road and secured by a locked gate. Almaraz pulled into the driveway of the yard as much as he could and got out of the truck to unlock the gate. The

flatbed part of the truck obstructed about eight feet of the fifteen-foot-wide, right-hand lane of the feeder. All the "operating lights that needed to be on for the nighttime" were on. Nevertheless, Salmon did not see the truck and hit it; the impact severed Gibson's head from her body. After an investigation, the State charged Salmon with manslaughter and intoxication manslaughter. The disputed issue at trial was causation: Was the accident Salmon's or Almaraz's fault? After being charged that jury unanimity was required, the jury found Salmon guilty on both counts. No juror dissented when the trial court announced the jury's verdicts. The defense declined the trial court's invitation for a jury poll and the trial court instructed the jurors to return the next day for the punishment phase of trial.

The next morning, a juror (Juror 7) informed the trial court that "her vote was not for guilt," and the trial court announced it would poll the jury and then, if necessary, question Juror 7 individually. The State objected to any late polling or taking of evidence in violation of Texas Rule of Evidence 606(b) (prohibiting juror testimony during inquiry into validity of verdict except under narrow circumstances). The trial court polled the jury and, in response to Juror 7's statement that "I wish I had chosen not guilty," questioned her outside the presence of the other jurors. During that questioning, Juror 7 vacillated between representing her final vote as guilty and as not guilty. The defense urged the trial court to grant its written motion for mistrial and new trial, citing Salmon's constitutional right to a unanimous verdict. The State argued that the grant of a new trial would be contrary to Rule 606(b). The trial court ruled that "the constitutional rights of this defendant override any procedural issues that might be included. I am going to grant the mistrial." The trial court later memorialized its ruling in a written order.

The State filed this appeal. *See* Tex. Code Crim. Proc. art. 44.01(a)(3) (State can appeal order of trial court granting new trial); *State v. Evans*, 843 S.W.2d 576, 578 (Tex. Crim.

2

App. 1992) (under article 44.01(a)(3), State can appeal order "functionally indistinguishable from an order granting a new trial").

## STANDARD OF REVIEW

A trial court's decision to grant or deny a motion for new trial is reviewed only for an abuse of discretion. *State v. Herndon*, 215 S.W.3d 901, 906 (Tex. Crim. App. 2007). "That discretion is not, however, unbounded or unfettered." *Id*. A trial court "has discretion to grant or deny a motion for new trial 'in the interest of justice,' but 'justice' means in accordance with the law." *Id*. at 907. "[A] trial court would not generally abuse its discretion in granting a motion for new trial if the defendant: (1) articulated a valid legal claim in his motion for new trial; (2) produced evidence or pointed to evidence in the trial record that substantiated his legal claim; and (3) showed prejudice to his substantial rights under the standards in Rule 44.2 of the Texas Rules of Appellate Procedure." *Id*. at 909.

## DISCUSSION

The State argues, inter alia, that the trial court abused its discretion in granting a new trial because no competent evidence supported Salmon's legal claim that the jury failed to reach a unanimous verdict. We agree, find this issue dispositive of the appeal, and decline to address the State's remaining issues, including the propriety of the trial court-initiated jury poll. Tex. R. App. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Texas Rule of Evidence 606

Rule 606 governs a juror's competency as a witness and provides in part that "[d]uring an inquiry into the validity of a verdict or indictment, a juror may not testify about any

3

statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment. The court may not receive a juror's affidavit or evidence of a juror's statement on these matters." Tex. R. Evid. 606(b)(1). There are two exceptions in the statute. "A juror may testify: (A) about whether an outside influence was improperly brought to bear on any juror; or (B) to rebut a claim that the juror was not qualified to serve." *Id*. R. 606(b)(2). The Supreme Court has added a constitutional exception. In *Pena-Rodriguez v. Colorado*, 580 U.S. 206 (2017), the Supreme Court held "that where a juror makes a clear statement that indicates he or she relied on racial stereotypes or animus to convict a criminal defendant, the Sixth Amendment requires that the no-impeachment rule give way in order to permit the trial court to consider the evidence of the juror's statement and any resulting denial of the jury trial guarantee." *Id*. at 225.

No-impeachment rules of evidence codify the "near-universal and firmly established common-law rule" that prohibits the admission of juror testimony to impeach a jury verdict. *Tanner v. United States*, 483 U.S. 107, 117 (1987); *see Lutcher v. Morrison*, 14 S.W. 1010, 1011 (Tex. 1891) ("Appellants appended to their motion for a new trial the affidavits of a number of the members of the jury who tried the cause, to the effect that the verdict returned was not the agreement of the whole jury, but of a majority of it only. The court, upon the motion of the defendant, struck out and refused to consider the affidavits. From the first organization of this court the receiving of such affidavits has been always discouraged.")

The Jury Poll and Juror 7's Testimony

Endeavoring to not run afoul of Rule 606(b), the trial court first tried to resolve the issue by way of a jury poll. *See* Tex. Code Crim. Proc. art. 37.05 ("The State and the defendant

4

each have the right to have the jury polled, which is done by calling separately the name or identification number of each juror and asking the juror if the verdict is the juror's. If all jurors, when asked, answer in the affirmative, the verdict shall be entered upon the minutes; but if any juror answers in the negative, the jury shall retire again to consider its verdict."). In keeping with the heart of the statute, the trial court called each juror separately by identification number and asked whether the guilty verdict was, in fact, his or her verdict. Jurors 1-6 agreed that it was, stating either "Yes" or "Guilty." The trial court then asked Juror 7:

THE COURT: Juror 7?

JUROR [7]: May I ask a question?

THE COURT: No, ma'am. It's a "Yes" or "No" answer.

JUROR [7]: To what it is now or what --

THE COURT: Was it -- your decision in this case, was it guilt or not guilty?

JUROR [7]: I wish I had chosen not guilty.

Jurors 8-11 each stated their verdicts as "Guilty."

After the jurors exited the courtroom, the trial court asked the bailiff to bring Juror 7 back in. The trial court swore her in. Before she testified, the State again objected on Rule 606(b) grounds. The trial court addressed the juror:

THE COURT: Ma'am, I'm not going to ask you what anybody else in your jury did. I'm simply going to ask you one question: Was your not guilty decision your decision all along or are you changing it?

JUROR [7]: My decision all along.

5

The bailiff took Juror 7 back to the jury room. The State argued Juror 7 had changed her verdict; the Defense asked the trial court to declare a mistrial and grant a new trial. The trial court asked the bailiff to bring Juror 7 back over the parties' objections.

THE COURT: Ma'am, it's also been represented to me that you have indicated that you are not going to cooperate and continue to deliberate with this jury.

JUROR [7]: Excuse me? I'm not understanding.

THE COURT: It was represented to me that you did not wish to deliberate on any issues with this jury.

JUROR [7]: I did not say that.

THE COURT: Okay. So you are willing to continue?

JUROR [7]: Because I have to.

THE COURT: Okay.

JUROR [7]: Unfortunately, I -- I should have just stuck to my guns and –

THE COURT: Well, that -- I don't need to hear all of that. But the question is whether or not your –

[STATE]: Your Honor, I object to anything that -- I mean she's stating that she should have stuck to her guns, which means she has changed her opinion.

THE COURT: Have you changed your opinion?

JUROR [7]: To guilty?

THE COURT: Or innocence?

JUROR [7]: I said not guilty.

THE COURT: Okay.

Juror 7 left the courtroom, and the trial court addressed the attorneys: "The interpretation -- I mean what she said is open for interpretation about sticking to her guns.

6

That would also indicate that that was her opinion all along except for -- except for perhaps the final vote." After listening to the parties' arguments and acknowledging the State's repeated objection, the trial court announced its ruling: "I understand. Once again, though, I believe that the constitutional rights of this defendant override any procedural issues that might be included. I am going to grant the mistrial."

Juror 7's Testimony Was Not Competent to Impeach the Verdict

The facts above illustrate the reason for Rule 606(b). Juror 7's polling response, "I wish I had chosen not guilty" signified that her final vote was guilty and the verdict of guilty was unanimous. Some of Juror's 7's testimony ("[not guilty was my] decision all along," and "I said not guilty") signified that her final vote was not guilty and the verdict of guilty was not unanimous. Other of her testimony ("Unfortunately, I -- I should have just stuck to my guns") signified that her final vote was guilty and the verdict of guilty was unanimous. At a motion for new trial hearing, the trial court "alone determines the credibility of the witnesses." *Colyer v. State*, 428 S.W.3d 117, 122 (Tex. Crim. App. 2014). And as an appellate court, we must "view the evidence in the light most favorable to the trial court's ruling, defer to the court's credibility determinations, and presume that all reasonable fact findings in support of the ruling have been made." *State v. Thomas*, 428 S.W.3d 99, 104 (Tex. Crim. App. 2014). But Juror 7, by rule, was not competent to testify during an inquiry into the validity of the verdict as to her own mental processes concerning the verdict. She did not testify about "whether any outside influence was improperly brought to bear upon any juror," "to rebut a claim that the juror was not qualified to serve," or her own reliance on "racial stereotypes or animus to convict a criminal defendant." Tex. R. Evid. 606(b)(2); *Pena-Rodriguez*, 580 U.S. at 225. Rather, hers was disgruntled juror testimony—that which Rule 606(b)

7

"flatly prohibits." *Colyer*, 428 S.W.3d at 124; *see Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 666 (Tex. 2009) (one reason for Rule 606(b) is "preventing a disgruntled juror whose view did not prevail from overturning the verdict") (citing *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 366-67 (Tex. 2000)). And, in this context, we do not consider incompetent evidence, *see Golden Eagle Archery*, 24 S.W.3d at 369, regardless of what the trial court thinks about it. *State v. Gallien*, 631 S.W.3d 885, 896 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd).

The testimony, though taken in a good-faith effort to protect Salmon's constitutional rights, resulted in evidence deemed incompetent by Rule 606(b). The trial court abused its discretion in basing its decision to grant a new trial on that incompetent evidence. *State v. Ordonez*, 156 S.W.3d 850, 852 (Tex. App.—El Paso 2005, pet. ref'd); *see also White v. State*, 181 S.W.3d 514, 526 (Tex. App.—Texarkana 2005), *aff'd*, 225 S.W.3d 571 (Tex. Crim. App. 2007).

We are left with the jury poll. And that polling, however unorthodox, did not call into question the unanimity of the verdict. *See Batten v. State,* 549 S.W.2d 718, 721 n.5 (Tex. Crim. App. 1977) (where juror answers jury poll by confirming that vote was his or her own, answer is conclusive, and further inquiry is not permissible).

Because jurors cannot impeach their own verdicts except in narrow circumstances not applicable here, the trial court did not have competent evidence before it substantiating Salmon's legal claim. *Herndon*, 215 S.W.3d at 909. The trial court therefore abused its discretion in granting Salmon's motion for new trial.

8

**CONCLUSION**

We reverse the trial court's order granting Salmon's motion for new trial, reinstate the jury's unanimous guilty verdict, and remand this cause to the trial court for a jury trial on punishment. *See Ex parte Pete*, 517 S.W.3d 825, 832-33 (Tex. Crim. App. 2017); *Gallien*, 631 S.W.3d at 898.

_____

Chari L. Kelly, Justice

Before Justices Baker, Kelly, and Smith

Reversed and Remanded

Filed:  October 16, 2024

Publish

9